# APPENDIX.

## Notes of Cases Not Otherwise Reported.

J. N. MINER, Plaintiff and Appellee, v. L. H. RHYNDERS, Defendant, and Appellee. CHARLES CITY NATIONAL BANK, Intervener and Appellant.

EXPIRATION OF CONTRACT: *Title to property bought with advances.* Defendant, being indebted to a bank, entered into an agreement with it, whereby he agreed to purchase horses with funds to be furnished by the bank, and resell the same, and turn the proceeds over to the bank, it to have title to the horses until resold, and to apply the profits of such transactions to the payment of defendant's indebtedness. After the indebtedness was paid, defendant continued to borrow of the bank, and later entered into partnership with plaintiff, and bought and sold horses. *Held*, that the object of the original agreement with the bank having been accomplished, it thereafter had no lien on horses purchased by the firm, in part, with money borrowed by defendant from the bank.

APPEAL: *Objection below.* On appeal, a party will not be awarded relief not claimed in the petition, and asked for on a theory, advanced for the first time on appeal. '

*Appeal from Floyd District Court.*—HON. J. C. SHERWIN, Judge.

FRIDAY, MAY 11, 1900.

THE original suit was for a partnership accounting between plaintiff and defendant, Rhynders. A receiver was appointed, who sold certain property alleged to belong to the firm. The Charles City National Bank intervened, claiming that it held a lien on the property sold by the receiver, and asking that the money received be turned over to it. The case was tried to the court, resulting in a decree and judgment for plaintiff, and an order dismissing the interveners petition. Intervener appeals.—*Affirmed.*

(725)

*Blythe, Markley & Smith* for appellant.

*Ellis & Ellis* for appellee Miner.

*P. W. Burr* for appellee Rhynders.

DEEMER, J.—Plaintiff, as we have said, sued defendant, Rhynders, for a partnership accounting, alleging that certain horses which we will denominate as the "Postville horses," were purchased by defendant with partnership funds, asking the dissolution of the partnership, the appointment of a receiver, and general equitable relief. Defendant answered, denying the partnership, and that plaintiff had any interest in the horses in controversy. He alleges that he purchased and paid for the horses, and that they are his individual property. The intervener claims that it furnished the money with which the horses were purchased under an agreement with defendant by the terms of which it was to furnish defendant Rhynders with money with which to buy horses; that he (Rhynders) should buy horses with the money so furnished, ship them, bring back the proceeds, and that the horses should belong to the bank, until sold and the proceeds returned; that, in virtue of this agreement, it had a lien on the horses, and on the proceeds thereof now in the hands of the receiver appointed in the main suit. Plaintiff denied the allegations of the intervener's petition, and says that the horses were purchased with partnership funds. Shortly before the case was brought on for trial, defendant Rhynders filed an answer to the petition of intervener, in which he practically denied all the allegations thereof. He further pleaded that he and plaintiff formed a partnership in February, 1893, for the purchase and sale of horses; that the horses in controversy were purchased by the partnership with funds belonging to it, and belonged to the firm. A stipulation between plaintiff and defendant was filed, in which it was agreed that there was a partnership existing between them, finding the amount due plaintiff, and agreeing to judgment for the amount thereof. It was also agreed that the horses in controversy, and the funds derived from the sale thereof, belonged to the firm. A decree was entered pursuant to this stipulation, and the case was then tried to the court on the issue between the intervener and plaintiff, and defendant, resulting in the decree hitherto mentioned.

The sole question presented seems to be one of fact, and that is, were the "Postville horses" purchased with money furnished by intervener under the agreement pleaded by it, or were they purchased with money belonging to the partnership existing between plaintiff and defendant? That there was a partnership arrangement between plaintiff and

defendant entered into at about the time claimed is conceded. It is also shown without dispute that intervener advanced money to defendant from time to time, and that it at one time had an arrangement with defendant for the furnishing of money. The exact terms of this agreement are in dispute, however. Intervener does not claim anything, in virtue of its being a partnership creditor, and want of notice is not relied on by plaintiff.

From a careful consideration of the evidence, we are led to the conclusion that the intervener made an arrangement with defendant some years before plaintiff entered into a partnership with him (defendant), by which the bank agreed to advance defendant money with which to buy horses; defendant agreeing that he would buy horses, ship them to market, and bring back the proceeds, and that the horses so bought should belong to the bank until sold and the proceeds returned. At the time this arrangement was made, Rhynders was owing the bank six hundred and seven dollars, and the agreement was made in order to give him (Rhynders) an opportunity to pay this debt. The debt was paid within a year after this arrangement was made. But defendant contined to borrow money from time to time thereafter. No further arrangement was made, and for a part of the time, after the agreement was entered into, defendant bought horses on commission, and a part of the time he bought with money furnished by the bank. Long after the original agreement was made, plaintiff and defendant entered into partnership for the buying and shipping of horses, and the "Postville horses" were acquired by this partnership. It may be that the bank furnished the drafts with which these horses were purchased, but that the money was loaned by the bank for this purpose is extremely doubtful. In any event, as the purpose of the original agreement had been fulfilled, the bank became a simple creditor of the defendant for money thereafter advanced.

It would not have a lien for money furnished without express contract, and we are constrained to hold that the original contract giving the right had expired by its terms. Confirmation of this view is found in the fact that intervener, at one time, commenced an attachment suit against defendant, in which it claimed judgment for balance due, and asked an attachment against defendant's property. Nothing was said in this petition about any lien on property. But, if mistaken in this view, still intervener is not entitled to recover.

Defendant had from one thousand two hundred dollars to one thousand eight hundred dollars of his own that he used in the business. This he used with money drawn from the bank, and no distinction was made in the funds. His account was kept in the ordinary manner, and sometimes disclosed a balance in his favor, and sometimes a debit balance. No attempt was made to keep a

separate account for each shipment of horses. At the time of the last shipment Rhynders was indebted to the bank in the sum of two thousand and twenty dollars and fifty-one cents. He received from the last. shipment drafts amounting to five thousand one hundred dollars, and drew out during the month five thousand two hundred dollars and fifty-nine cents, leaving an overdraft at the end of the month of two thousand one hundred and twenty-one dollars and ten cents. The shipment to which we have referred was made by the firm of which plaintiff was a member, and the proceeds undoubtedly belonged to the firm. At least there was no showing that the horses so shipped were purchased with the money belonging to the bank. The "Postville horses" were purchased in part, at least, with money furnished by the bank, but it evidently came out of the proceeds of the shipment made by the firm; for the evidence plainly shows that, as soon as the five thousand one hundred dollars was deposited, the bank issued the drafts that went to pay for the "Postville horses." From this statement of facts it is apparent that intervener is not entitled to a decree establishing a lien on the horses known as the "Postville horses" or the proceeds thereof. But it is claimed in argument that intervener is a partnership creditor, and as such is entitled to judgment against the partnership, and a decree giving it a first lien on the partnership assets in preference to the claims of other partners. This contention seems to be raised for the first time in this court. The claim is not made in the petition, and no such issue was tendered as would justify this relief. Intervener claims a lien in virtue of the arrangement made with defendant for furnishing money. It nowhere asserts that it is a partnership creditor, and, of course, is not entitled to a decree establishing its claim as such. We are content with the conclusions of the trial court, and the decree is AFFIRMED.

SHERWIN, J., took no part.