STATE BOARD OF SOCIAL WELFARE, appellant, v. RUTH TEETERS; JAMES H. TEETERS and NAOMI I. WESTPHAL, individually and as executors of estate of John L. Teeters, deceased, appellees.

No. 52019.

(Reported in 141 N.W.2d 581)

APRIL 5, 1966.

Pattie, Hinshaw & King, of Marshalltown, for appellant.

Mote, Wilson & Welp, of Marshalltown, for appellees.

MOORE, J.—Plaintiff, State Board of Social Welfare, in this declaratory judgment action seeks to establish a lien on realty now held by defendants for the amount it paid their brother, Grant Teeters, now deceased, as old-age assistance. The trial court dismissed plaintiff's petition for want of proof sufficient to sustain the prayer thereof. Plaintiff has appealed and will be referred to as the board.

The evidence consists of a stipulation of facts and several documents admitted without objections. The facts are therefore without dispute. Our review is de novo as this action was tried in equity. Rule 334, Rules of Civil Procedure.

Being in equity with undisputed facts we give no weight to the findings of the trial court as credibility of witnesses is not a factor. Final determination of this case is for this court. After a careful examination of the record and documents we draw our own inferences and conclusions. Cassaday v. DeJarnette, 251

Iowa 391, 393, 101 N.W.2d 21, 23; Ames Trust and Savings Bank v. Reichardt, 254 Iowa 1272, 1280, 121 N.W.2d 200, 204.

Plaintiff by virtue of the provisions of chapter 249, Code of Iowa, approved the application of Grant Teeters dated October 29, 1957, for old-age assistance and thereafter paid him $65.50 each month until his death May 29, 1963, a total of $4913.70.

John L. Teeters, father of Grant and defendants herein, died February 4, 1957. His will executed March 6, 1953, was admitted to probate January 24, 1958. The estate remained open and no distribution of personal property had been made at time of trial. After payment of debts and administration costs the remaining assets consist of several lots of real estate in State Center which the will describes and designates as his "home property", and three United States Savings Bonds having a cash value of $3180. The inventory fixes the value of the home property at $10,000. John L. Teeters owned no other real property at the time of his death.

The pertinent parts of John L. Teeters' will are:

"2. I give, devise and bequeath to my beloved daughter, Ruth Teeters, for her use for her lifetime, my home property described as follows: [describing all of the real estate reported in the inventory].

"3. I give, devise and bequeath all the rest, residue and remainder of my property of whatever kind and wherever located, to my beloved son, Grant Teeters, for his use for his lifetime, and subject always to a life estate of Ruth Teeters in the home property as set out in paragraph two hereof, I do give to him, my son, Grant Teeters, the right, power and authority, at such time or times and in such manner as pleases him, to sell, assign, transfer, convey, lease, exchange, invest and reinvest, rent, mortgage or pledge said property or any part thereof and contract with reference thereto and to convert to his own use and take as his own property any part thereof that he considers necessary for the maintenance, support or comfort of his sister, Ruth, or himself and if he and his sister, Ruth, shall be living at the time, she and he, acting jointly, shall have the right, power and authority to sell and convey my home property described in paragraph two hereof, absolutely and in fee simple.

"4. If at the death of my son, Grant Teeters, there remain any part of my property in the original or a changed form, all such property so remaining, I give, devise and bequeath to my son, James H. Teeters, and my daughter, Naomi I. Westphal, if both be then living and all to the survivor if either be then deceased. On receiving any such property, without binding them or making it obligatory, I ask that they or the survivor, at once make all necessary arrangements to assure that their sister, Ruth, if living, will have all proper maintenance, support and comfort, for her lifetime."

Naomi I. Westphal and James H. Teeters as executors of the estate of James L. Teeters and residuary beneficiaries after Grant's death and the first life tenant, Ruth Teeters, are defendants and resist plaintiff's attempt to establish a lien against the home property.

Subsequent to their father's death, Ruth and Grant occupied and used the home property as their residence. Ruth continues to so occupy it: She has paid all real-estate taxes, insurance, maintenance and cost of utilities since her father's death. Until his death Grant paid her for room and board amounts varying from $45 to $55 per month from funds received by him from the board.

The application for old-age assistance in brief stated that Grant Teeters does "hereby apply for Old-Age Assistance. Date of birth 1-23-91. Value of property: real—none. personal—none. Monthly income—none. I will assist in securing data relative to my eligibility for assistance * * * and I will give any officially appointed representative of the county or state department of Social Welfare information necessary to make a complete investigation. I hereby swear or affirm that the above statements are true to the best of my knowledge. (Signed) Grant Teeters." At the bottom of the same page there appears the following: "The eligibility requirements for the aid requested and his right to an appeal and fair hearing have been fully explained to the above applicant. Said application was sworn to before the undersigned: By (Signed) Helen Smith, (Title) PAW II, Dated 10-29-57."

With reference to assistance given Grant Teeters the board

on November 22, 1957, filed with the Marshall County recorder the following notice of lien:

"To WHOM IT MAY CONCERN: This is to certify that the application for assistance of the above named person as provided for by Chapter 249, Code of Iowa, 1950, as amended, has been approved. The assistance furnished under this order, together with prior and subsequent orders of the State Department of Social Welfare, is made a lien by law on any real estate owned either by the person above named and to whom assistance has been granted. This order shall be subject to review at anytime by the Department and the amount awarded may be increased, decreased or discontinued.

"You are hereby notified that all assistance furnished the above named person and spouse is made a lien by law on any real estate owned by either of them and the exact amount of assistance paid may be determined by communicating with the State Department of Social Welfare at Des Moines, Iowa." Signed by the Director of the Division of Accounts and Audits from the State Department of Social Welfare.

On the same page with said notice of lien there appears a certificate and order for assistance as follows:

"The request of the above named person for Old-Age Assistance is hereby approved.

"It is therefore ordered that such assistance is hereby fixed and ordered paid in the sum of $65.50 per month in accordance with county recommendation; assistance to begin November 1, 1957, and continue until further order of the Department." Signed by said Director.

No estate has been opened for Grant Teeters. He died seized of no real estate in fee simple title. Apparently he possessed no personal property subject to probate proceedings. The only interest Grant had in the real estate involved here (the home property) was derived under the terms of his father's will. Defendants have not executed to plaintiff or Grant any instrument affecting said real estate. Grant did not execute to the board any deed or mortgage.

I. Plaintiff's petition alleges and quotes certain parts of Code sections 249.19, 249.20 and 249.21 and paragraphs 2, 3 and

4 of John L. Teeters' will and then alleges Grant had full power and authority to dispose of the home property or any part thereof and to convert the same for his own use, comfort and support subject only to the life estate of Ruth. Plaintiff further alleges by virtue of his application for old-age assistance Grant did exercise his power to dispose of said property and that under the provisions of section 249.19 the state board has a valid lien against the home property subject to the life estate of Ruth. The prayer asks the court to enter a declaratory judgment establishing and confirming its $4913.70 claim as a lien against said real estate, subject to the life estate of Ruth and an order directing the executors of the estate of John L. Teeters to pay said claim or in the alternative to direct them to sell the realty after Ruth's death and then pay the claim. It further prays for such other and further relief to which plaintiff may be in equity entitled.

Section 249.19 provides in part: "On the death of a person receiving or who has received assistance under this chapter * * * the total amount paid as assistance, shall be allowed as a lien against the real estate in the estate of the decedent * * *."

Section 249.20 provides in part: "In any event, the assistance furnished under this chapter shall be and constitute a lien on any real estate owned * * * for assistance and funeral benefit * * *. Whenever an order is made for such assistance to any person, a copy of such order shall be indexed and recorded in the manner provided for the indexing of real-estate mortgages in the office of the county recorder * * * and such recording and indexing shall constitute notice of such lien."

Section 249.21 provides in part: "All * * * executors * * * of estates subject to liens provided for by this chapter shall when such lien as provided in sections 249.19 and 249.20, is filed * * * or established by other legal proceedings as provided by law, pay said lien * * * when so ordered by the court."

Under section 249.19 upon the death of the recipient the total amount paid shall be allowed as a lien against the real estate in the estate of the decedent and as a claim of the second class against the estate of the decedent. The board's lien is created by statute. It is a statutory lien and not a mortgage. In

In re Estate of Lane, 244 Iowa 1076, 1081, 59 N.W.2d 593, 596, regarding liens under the provisions of chapter 249, we say:

"The State contends these statutory liens are mortgages created by operation of law. We disagree. Although the term 'mortgage' is included in the generic term 'lien', statutory liens are liens created by statute and mortgages are liens created by contract. Assuming the legislature might have given these old-age-assistance liens another name it did not do so. Nor would a different name change them from general liens to specific liens. They covered no specific property but were liens upon 'any real estate owned' by decedent."

 Admittedly Grant's interest in the home property must be determined from the terms of his father's will. Stated briefly, the home property was given to Ruth for her lifetime, all other property was given to Grant for his lifetime, subject to Ruth's life estate. Grant was given the right to sell, mortgage or pledge said property and to convert to his own use any part thereof which he considered necessary for the support of Ruth or himself, during Ruth's lifetime the home property could not be sold and conveyed unless she acted jointly with Grant and upon Grant's death any of the property remaining in its original form was given to James and Naomi.

The chief concern of the father was the welfare of his unmarried daughter Ruth who was 22 years younger than Grant. Under paragraph 4 a moral obligation is placed on James and Naomi as remaindermen to look after Ruth.

Upon Grant's death the real and personal property remained in its original form and passed to the remaindermen, subject to Ruth's life estate unless, as contended by the board, Grant during his lifetime conferred some interest in the realty to the board. The legal propositions thus raised need not nor are they decided. The obvious answer to the board's contention is found in the application. It states Grant owned no real or personal property and after investigation was approved on that basis by the board. Any claimed intention of Grant or the board to create any lien or interest in any property rights in his father's estate is clearly negatived by the terms of the application. There is no evidence

1120

of any decision by Grant to encumber the realty or invade the principal of the personal property.

■ II. The prayer in the petition that defendant-executors of the father's estate be required to pay the board's claim is unsupported by the pleadings and evidence. Like his interest in the realty any claim of Grant to the personalty passed to the residuary beneficiaries upon his death.

Title to the personal property vested in the executors and did not pass to Grant directly upon his father's death. Section 636.1, Code, 1962; In re Estate of Dalton, 183 Iowa 1013, 168 N.W. 332; Powell v. McBlain, 222 Iowa 799, 269 N.W. 883.

We, like the trial court, conclude the evidence is insufficient to sustain the board's claim of statutory lien against the realty or its prayer the executors be required to pay its claim.

■■ III. Much of appellant-board's brief and argument is devoted to the theory of an equitable lien. It is an issue raised for the first time in this court, is not raised by the pleading, was not considered by the trial court and is not presented by the prayer for general equitable relief. Relief under a general prayer for equitable relief must be consistent with the case made by the pleadings and must be such as will not surprise defendants. Miner v. Rhynders, 111 Iowa 725, 82 N.W. 909; Paintin v. Paintin, 241 Iowa 411, 41 N.W.2d 27, 16 A. L. R.2d 659; Skemp v. Olansky, 249 Iowa 1, 85 N.W.2d 580; Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 109 N.W.2d 695; Iowa City v. Muscatine Development Co., 258 Iowa 1024, 141 N.W.2d 585, and citations in these opinions. We find nothing in the board's pleadings which indicates reliance on anything other than the statutory lien alleged in the petition. The equitable lien issue as now argued by the board is not properly before us. Our study of the record, however, does not persuade us this contention has merit under the record here. Defendants had no contact or dealings with the board.

After careful examination of the record we find ourselves in accord with the decree of the trial court.—Affirmed.

All JUSTICES concur.