**GENERAL CASUALTY COMPANY OF WISCONSIN, Appellant,**

v.

**Donald R. HINES, James E. Hines, John Davis, Linda Davis, and Jessie B. Ellison, Appellants.**

**No. 52778.**

Supreme Court of Iowa.

Feb. 6, 1968.

Mosier, Mosier, Thomas, Beatty & Dutton, Waterloo, for appellant.

Kildee, Keith, Gallagher, Lybbert & Martin, Waterloo, for appellee Jessie B. Ellison.

K. L. Kober, Waterloo, for appellees Donald R. Hines and James E. Hines.

Evans & Hinton, Waterloo, for appellees John Davis and Linda Davis.

RAWLINGS, Justice.

By petition for declaratory judgment plaintiff-insurer sought to avoid liability with regard to a particular automobile-pedestrian accident. Defendants resisted.

Trial court held adverse to plaintiff and it appeals. We affirm.

Defendant James E. Hines, operating an automobile owned by John and Linda Davis, struck and injured defendant-pedestrian Jessie B. Ellison. At time of the accident defendant Donald R. Hines, father of James, held a policy of insurance issued by plaintiff.

Among other things the omnibus clause of this policy provided liability coverage with respect to a non-owned automobile operated by a relative of the named insured. Without question James was such a relative.

Specifically, coverage provided is as follows:

"PERSONS INSURED: The following are insureds under Part 1:

"(a) * * *

"(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) * * *

"DEFINITIONS: Under Part 1:

" * * *

" 'relative' means a relative of the named insured who is a resident of the same household;

" * * *

" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;"

Factually, the record discloses, without dispute, John Davis took the 1956 Mercury convertible here concerned to the Hines residence in Waterloo for the express purpose of there displaying it for sale and attracting possible buyers. The keys were left with the car. From this point on the evidence is in conflict.

The basic issues presented on this appeal are, (1) whether the accident-involved-vehicle, at time here concerned, was being operated with permission or reasonably believed permissive use of the owner, and (2) whether it was furnished for regular use by either the named insured or any relative.

■ I. Extent of coverage of an insurance policy is a proper subject for a declaratory judgment action. Rules 261–269, R.C.P.; Merchants and Farmers State Bank, etc. v. Rosdail, 257 Iowa 1238, 1243–1244, 131 N.W.2d 786, 136 N.W.2d 286; Hartford Acc. & Ind. Co. v. O'Connor-Regenwether Post No. 3633, V.F.W., 247 Iowa 168, 171–172, 73 N.W.2d 12; and 22 Am.Jur.2d, Declaratory Judgments, section 41, page 896. See also Katz Investment Co. v. Lynch, 242 Iowa 640, 647–648, 47 N.W.2d 800.

It is evident a justiciable controversy was here presented.

II. Regardless of the fact it brought the action for declaratory relief, and in so doing made certain affirmative allegations, plaintiff contends the burden was upon defendants to prove coverage under the policy.

The petition filed by it alleges, inter alia, " * * * the policy was violated and not in effect at the time of said accident * * *."

Rule 344(f) (5), R.C.P. provides: "Ordinarily the burden of proof follows the pleading; that is, he who pleads and relies upon the affirmative of an issue must carry the burden of proving it."

More specifically, 2 Anderson, Actions for Declaratory Judgments, Second Ed., section 375, pages 881–883, states: "What is meant by the 'burden of proof' is reflected by the Wigmorean characteristic expression of, 'the risk of non persuasion' and the con-

comitant obligation to go forward with the proof, when it might result in a failure to convince the trier of facts.

" * * * the burden of proof in a declaratory judgment action is the same as in ordinary actions at law or suits in equity, and the plaintiff bringing a declaratory judgment action must, in order to succeed, prove his case in accordance with and within the meaning of such rules, and this rule is not affected by the fact that a negative declaration is sought—of nonliability. It may be stated as a general rule, that the burden of proof is upon the plaintiff to show that conditions exist to justify the court in exercising its discretionary powers to grant declaratory relief pursuant to the declaratory judgment statute. It seems that an applicant for a declaratory judgment has the burden of showing that present justiciable controversy exists, and if this fact is not shown then a cause of action for declaratory relief is not established. So, also, where the plaintiff makes allegations which are denied by the defendant, then the onus is thrown on the plaintiff to prove the allegations charged in his pleading.

"To ascertain on which party the burden of proof lies the pleadings should be consulted, and the question is which of the parties would suffer an adverse judgment if no evidence was received and when that matter is determined, that party has the burden of proof."

See also Sanborn v. Maryland Cas. Co., 255 Iowa 1319, 1321, 125 N.W.2d 758; Pacific Ins. Co., etc. v. Christianson, 253 Iowa 241, 243, 111 N.W.2d 679; Fortgang Brothers, Inc. v. Cowles, 249 Iowa 73, 76, 85 N.W.2d 916; 26 C.J.S. Declaratory Judgments § 148, page 351; 22 Am.Jur.2d, Declaratory Judgments, sections 97–98, pages 963–966; and Annos. 23 A.L.R.2d 1243.

Plaintiff cites and leans rather heavily on Western Mutual Ins. Co. v. Baldwin, 258 Iowa 460, 137 N.W.2d 918. We do not find it applicable. That case involved the cooperation clause of an insurance policy. The real issue was not whether the insured had or had not cooperated with the company. Rather, the question presented was whether failure on the part of insured to cooperate was prejudicial to the insurer. Actually burden of proof, as presented in the case at bar, was not there involved.

Other cases cited by plaintiff on this issue are likewise deemed inapplicable.

Authorities on the subject at hand have admittedly adopted views which are in varying degrees of conflict. However, under the factual situation peculiar to the case now before us, we find no compelling cause to disagree with the principles expressed by Anderson, supra.

III. In any event plaintiff is hardly in a position to here effectively assert an issue as to burden of proof.

This case was tried to the court. On this subject generally see Wright v. Thompson, 254 Iowa 342, 353, 117 N.W.2d 520.

And plaintiff, without challenge, objection or resistance at any time or in any manner, prior to trial proceeded with presentation of evidence as is usual on the part of one having the burden of proof.

Dealing with a similar situation the court said in Liberty Mutual Insurance Co. v. Sweeney, 3 Cir., 216 F.2d 209, 211: "This question of what happens in a declaratory judgment suit when the plaintiff has undertaken the ordinary burden which a plaintiff has in bringing an action has been dealt with admirably in the Ninth Circuit in Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., 1949, 178 F.2d 541. Here was a case in which the plaintiff in a declaratory judgment suit had gone ahead and offered its testimony in full. Under these circumstances the Court said: 178 F.2d at page 547 'it is idle to insist that the burden of proof was not upon the appellant. If it was not, the appellant certainly spent many days proving a negative. We must assume that experienced counsel will

not adopt such trial tactics unless they are of the view, and *desire to give the impression to their opponent and to the court*, that they are going forward with evidence which it is their duty to produce. And, having done so, they cannot very well insist that, in reality, they assumed a burden which was not theirs.' See also Bauer v. Clark, 7 Cir., 1947, 161 F.2d 397, 401. The New Hampshire rule announced in Greenough supra, (Travelers Ins. Co. v. Greenough, 88 N.H. 391, 190 A. 129, 109 A.L.R. 1096) has likewise been qualified. In Hartford Accident and Indemnity Co. v. Lougee, 1938, 89 N.H. 222, 196 A. 267, 269, the court said: 'It [Plaintiff] voluntarily assumed the ordinary position of a plaintiff in opening the case and accepted the order for its closing. It thereby assumed the burden of proving it had not insured the defendant instead of requiring that action be taken in assertion of the claim of insurance. * * * It would be unfairly inconsistent for the plaintiff to take the advantages of the order of proceeding in the trial without submitting to the normally attendant burdens.' "

Under existing circumstances we find no reversible error on the part of the trial court in concluding, at close of hearing, the burden of proof was upon plaintiff.

IV. The record fails to disclose whether the action brought by plaintiff was in equity or law. And the trial court gave no consideration to that phase of the case. However, we deem this to here be of little or no significance.

■ Generally, in an action for declaratory judgment, findings of the trial court, as to conflicting evidence, are conclusive on an appellate court if supported by substantial evidence. Herrmann v. Fireman's Fund Insurance Company, 127 C.A.2d 560, 274 P.2d 501, 506–508; Decter v. Stevenson Properties, 39 C.2d 407, 247 P.2d 11, 18; 26 C. J.S. Declaratory Judgments § 164, page 385; and 2 Anderson, Actions for Declaratory Judgments, Second Ed., section 462, page

1103. See also rules 344(f) (1), (17), R.C. P.; and Hamilton v. Wosepka, Iowa, 154 N.W.2d 164, 166.

But if the case stands in equity, our review is de novo. Small v. Ogden, 259 Iowa 1126, 147 N.W.2d 18, 20; State Board of Social Welfare v. Teeters, 258 Iowa 1113, 1114, 141 N.W.2d 581; and Davenport Bank & Trust Co. v. Krenz, 256 Iowa 1171, 1172–1173, 130 N.W.2d 698.

■ V. In the same vein, when terms of an insurance contract are ambiguous, they will be accorded that construction most favorable to the insured. Mallinger v. State Farm Mut. Auto. Ins. Co., 253 Iowa 222, 226–232, 111 N.W.2d 647, and citations. See also Morris Plan Leasing Co. v. Bingham Feed & Grain Co., 259 Iowa 404, 143 N.W.2d 404, 412.

VI. At this point some distinctions are appropriate as to questions of law or of fact where construction or interpretation of a contract is involved.

■ A policy of automobile liability insurance is a contract, therefore generally governed by those accepted rules applicable to contracts. 44 C.J.S. Insurance § 1, page 471, and 29 Am.Jur., Insurance, section 4, page 434.

■ The meaning or legal effect of that portion of an insurance contract dealing with coverage as to a "non-owned automobile" is usually a question of law. Rowe v. United Com. Trav. Assn., 186 Iowa 454, 469, 172 N.W. 454, 4 A.L.R. 1235, and 17A C.J.S. Contracts § 616, page 1240.

As we said in Rapp v. Linebarger & Son, 149 Iowa 429, 438, 128 N.W. 555: "While, generally speaking, the construction of a contract is for the court alone, the rule is not without its exceptions. One of these exceptions is recognized in certain cases where resort is had to extrinsic circumstances for aid in the construction of a contract otherwise doubtful or ambiguous. If

the extrinsic evidence is undisputed, the construction falls within the general rule, and the court must construe the contract; but if the evidence be controverted, or different inferences may be drawn therefrom, then its construction becomes a jury question. (Authorities cited.)" See also Morris Plan Leasing Co. v. Bingham Feed & Grain Co., supra, loc. cit., 143 N.W.2d 412, and 17A C.J.S. Contracts § 617, page 1250.

■ This means if terms of a contract do not involve disputed fact issues, its meaning is determinable by the court. However, if a factual dispute does exist it must be resolved by the trier of the fact before the court may determine its legal meaning. On the other hand, application of particular facts to a given case normally rests with the trier of the facts, unless they are such no reasonable man could dispute them, in which case a question for the court alone is presented.

Without question there is a conflict in the evidence as to existence of permission to drive the car, or its extent if given. ·

Davis, in testifying, denies having given James any such right. Specifically this witness first said he did not recall having instructed James not to drive the automobile. After his recollection had been refreshed he stated that at one time or another specific instructions had been given that James was not to operate it.

This testimony is pointedly disputed by both father and son. A deposition given by James, introduced in evidence, discloses Davis did not tell him whether he was or was not to drive the vehicle. However, during trial, James testified Davis told him it was all right to drive the car in order to promote a sale, and he could do so any time for that purpose. Also, when Davis turned over keys to the automobile, at time it was delivered to the Hines residence, the only instruction given was that the car be driven by James in order to show it to his friends.

This testimony is corroborated by that of Donald Hines.

In addition, Richard Andreasen's testimony reveals that sometime after the accident Davis told him the automobile had been left at the Hines home so James could drive and show it to his friends for sale purposes.

■ The foregoing serves to disclose substantial evidence supporting the trial court's finding permission had been given for James to drive the automobile, and scope of such permissive use was not exceeded at time of the accident.

VII. The question now presented is whether the automobile being driven by James at time of the accident was "one not owned by or furnished for the regular use of either the named insured or any relative".

■ Absent evidence so clear as to preclude doubt by reasonable men this is essentially a question of fact. It is not unlike the problem presented as to existence of permission and whether the scope thereof has been exceeded.

The trial court, by amplified findings of fact labeled conclusions of law, determined that under existing circumstances the accident-involved-vehicle was "non-owned" within the meaning of the policy, not furnished for the regular use of James E. Hines.

Faced with the same problem as that now before us, the court said in American Casualty Co. v. Lattanzio, 78 N.J.Super. 404, 188 A.2d 637, 641: "Obviously, the determination in a particular case of whether the insured was driving a non-owned automobile which had been furnished for his regular use, and thus was excluded from the coverage afforded by his insurance policy, must be controlled by the factual situation presented. * * * In Farm Bureau Mutual Automobile Ins. Co. v. Marr, supra, (D.C., 128 F.Supp. 67, p. 70), the court

while acknowledging the impracticability of a hard and fast rule, found the following questions, among others, to be of assistance in determining the ultimate issue:

" '1. Was the use of the car in question made available most of the time to the insured?

"2. Did the insured make more than mere occasional use of the car?

"3. Did the insured need to obtain permission to use the car or had that been granted by blanket authority?'

"Having in mind the intent and purpose of the clause in question, the issue to be determined is (1) whether the use of the car which the insured [or his relative] was driving was furnished to him, and (2) if so, whether it was furnished for his regular use. The frequency of the use made of the vehicle by the insured [or his relative] does not necessarily govern. The question is not whether he frequently used the vehicle but whether it was 'furnished' for his regular use. Implicit in the use of the quoted word is the necessity for some prior arrangement or understanding concerning the use of the vehicle. Such an arrangement could be in the form of a blanket permission to use the vehicle generally or to use it for a specific purpose. Evidence as to the past history of the use of the automobile is of assistance in determining whether there was such an arrangement, but it is the condition which obtained at the time of the accident which governs, and evidence of the past use of the automobile must be related to this date. A requirement that specific authorization be obtained as a prerequisite to the use of the vehicle would sustain a finding that it was not 'furnished' for his regular use. * * * If the use for which the vehicle was furnished was an irregular infrequent or casual one it would not come within the exclusionary clause and hence would be covered by the policy." [Addenda supplied.]

At the time here concerned James had deliberately driven the Davis car through a Waterloo area thought by him to be then most attractive to young people. It is his claim that in so doing he stopped at a bank in order to effect a personal mission or purpose. But this does not mean operation of the automobile on that occasion was in conflict with the owner's intent and purpose—exposure to the greatest number of prospective buyers. The trial court found it was within the scope of permission given and we agree.

In support of the foregoing see also State Farm Mutual Automobile Ins. Co. v. Bates, 107 Ga.App. 449, 130 S.E.2d 514, 516–518; Lincombe v. State Farm Mutual Automobile Ins. Co., La.App., 166 So.2d, 920, 923–924; George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co., 220 Or. 520, 349 P.2d 789, 791–792; State Farm Mutual Automobile Ins. Co. v. Smith, 206 Va. 280, 142 S.E.2d 562, 566–568; 13 Federation of Insurance Counsel 65; and Annos. 86 A.L.R.2d 937.

■ The trial court's finding that the vehicle in question was a non-owned automobile *not* furnished for regular use, is supported by substantial evidence.

VIII. Plaintiff also asserts on appeal, if the Davis car was not furnished for regular use then the insured did not and cannot prove James had permission to operate it, or that its operation at the time here concerned was within the scope of the owner's permission.

This argument is defeated by our prior determination, (1) James had permission to operate the Davis car; (2) it was not furnished for his regular use; and (3) it was being operated at the time here concerned within the scope of permission given.

Furthermore, this contention falls of its own weight. It presupposes that if permission given by Davis was not for regular use it could then be for no other purpose.

As heretofore disclosed, Davis gave James permission to drive the car where

young people, interested in buying, would be most likely to see it. Stated otherwise he was to expose it as much as possible to the view of prospective purchasers.

Some confusion on this subject is possibly created by a seeming conflict in the trial court's findings. However, any such appearance of inconsistency is without substance or effect.

At one point the court found consent given by Davis was not limited in any particular way, followed immediately by a finding James was given permission to operate the car to the end it would come to attention of young persons interested in buying it. There is then a finding James was operating the vehicle, at time of the accident, within the scope of permission given by Davis.

■ Touching on this subject we have held, a correct conclusion will not be cast aside because of error in reasoning on the part of the trial court. In re Estate of Martin, Iowa, 155 N.W.2d 401, (opinion filed January 9, 1968); Binkholder v. Carpenter, Iowa, 152 N.W.2d 593, 596; and Houlahan v. Brockmeier, 258 Iowa 1197, 1203, 141 N.W.2d 545, 924.

More specifically, 5 Am.Jur.2d Appeal and Error, section 844, page 288, citing Rank v. Kuhn, 236 Iowa 854, 20 N.W.2d 72, states the applicable rule to be: "In reviewing the findings of fact of the trial judge, an appellate court must give them a liberal construction so as to uphold rather than defeat the decision appealed from; doubtful or ambiguous findings of the trial judge will, wherever this is reasonably possible, be construed so as to support the decision appealed from. This applies not only to the specific facts found by the trial judge, but also to the inferences of fact which he made from the facts specifically found. A general finding of the trial court is to be given the effect of a finding of every special fact necessary to be found to sustain the decision appealed from. However, findings of fact by the court below cannot on appeal be given an unnatural meaning. The appellate court may disturb findings of fact that are contrary to a conclusion of law resulting from other facts found.

"The appellate court will attempt to reconcile or harmonize apparently inconsistent findings of the trial judge and will not read into them an unwarranted inconsistency. Even if the findings of the court below are actually irreconcilable, the appellate court may sustain the decision appealed from on the basis of those findings which allow the conclusion reached by the court below, if they are supported by the evidence."

IX. Under the factual situation presented in this case we find no reversible error on the part of the trial court in concluding the Family Combination Automobile Policy, #4FA 21 37 32, issued by plaintiff, General Casualty Company of Wisconsin, to defendant Donald R. Hines, affords liability coverage with respect to the accident which occurred June 27, 1964, wherein defendant Jessie B. Ellison, was struck and injured by the 1956 Mercury automobile owned by defendants John and Linda Davis, being at that time driven by defendant James E. Hines

Affirmed.

All Justices concur.