**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Carl F. TOWNSEND, Debbie Townsend and Brett Schmidt, Defendants-Appellees.**

No. 84–267.

Court of Appeals of Iowa.

Nov. 20, 1984.

As Corrected March 20, 1985.

Timothy J. McKay of McKay & Moreland, P.C., Ottumwa, for plaintiff-appellant.

Lloyd E. Keith and Kenneth L. Keith of the Dull, Keith & Beaver, Ottumwa, and W.T. Barnes of Barnes & Orsborn, P.C., Ottumwa, for defendants-appellees.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Carl F. and Debbie Townsend purchased, on August 14, 1981, an automobile policy from plaintiff State Farm through agent Bill Ridge. The policy described the Townsends 1969 Chevrolet Impala which was the Townsends' only operable family automobile. The policy provided coverage for a period from August 14, 1981 to November 14, 1981.

On October 22, 1981, one Randy Throgmartin was sentenced to 30 days in the county jail and was afraid to leave his car at his home during that period for fear his brothers would drive the car. Throgmartin had heard that the Townsends' only had one car and sometimes they needed a second car for errands. Townsend agreed to keep the car at the end of his driveway. Throgmartin placed no restrictions on the Townsends' use of the car. Mr. Townsend intended to use the car on the three or four days a week that his wife worked to go to the grocery store or pick his children up from school if the neighbor did not pick them up.

Townsend drove the car to his home on the 22nd; he drove it once on the 26th and again in the evening of the 26th when he was in an accident with defendant Schmidt.

Schmidt filed suit against Townsend and Throgmartin. Throgmartin had no insurance on the automobile. The policy that Townsend had with State Farm provides:

"Coverage for the Use of Other Cars"

"The liability coverage extends to the use, by an insured, or a newly-acquired car, a temporary substitute car or a non-owned car."

"Non-Owned car—means a car not:

1. owned by,

2. registered in the name of, or

3. furnished or available for the regular or frequent use of: you, your spouse, or any relatives."

State Farm brought this action seeking to determine that the liability coverage extended to Carl and Debbie Townsend did not extend to the accident because the Throgmartin car was not a "non-owned" automobile under the terms of Townsends' policy.

The trial court found that Throgmartin's auto was not furnished for Townsends' regular or frequent use and therefore was a non-owned auto within the provisions of Townsends' policy. State Farm appeals and we affirm.

## I.

The appellant claims the trial court erred in permitting Townsend to testify as to a statement his insurance agent made to him after the accident. The appellant made no objection to the question and answer at the time of trial. The error, if any, was not properly preserved. *See State v. Pardock*, 215 N.W.2d 344, 348 (Iowa 1974).

## II.

State Farm contends that the trial court erred in concluding that the Dodge Charger, although furnished or available to Townsend, had not been furnished for his regular or frequent use and was therefore a "non-owned car" within the meaning of the policy.

State Farm does not challenge any of the District Court's findings of facts. They contend, however, that the court reached an erroneous conclusion of law after finding that the car was loaned for the thirty days that Throgmartin was to be incarcerated and then determining that because the car was loaned only for that period of time there was no "regular or frequent" use of the vehicle. State Farm argues that the issue is not whether the insured actually used the automobile on a "regular and frequent" basis but whether the insured could have made regular or frequent use of the vehicle and that the opportunity to make frequent use whenever he desires is more important than the actual use.

Except in determining the legal consequences of the policy, we do not review the case de novo but only on errors assigned. *Bringle v. Economy Fire and Casualty*, 169 N.W.2d 879, 883 (Iowa 1969). When terms of an insurance contract are ambiguous, they will be accorded that construction most favorable to the insured. *General Casualty v. Hines*, 261 Iowa 738, 744, 156 N.W.2d 118, 122 (1968). The meaning or legal effect of that portion of an insurance contract dealing with coverage as to "non-owned automobile" is generally a question of law. While generally speaking the construction of a contract is for the court alone, the rule is not without exceptions. One exception is in cases

where resort is had to extrinsic circumstances for aid in the construction of a contract otherwise doubtful or ambiguous. If the extrinsic evidence is undisputed, the construction falls within the general rule, and the court must construe the contract; but if the evidence be controverted, or different inferences may be drawn therefrom, then its construction becomes a jury question. *General Casualty v. Hines* at 745; 156 N.W.2d at 123.

"The purpose of a nonownership clause, such as the one in question, is to provide the insured with coverage while the insured is engaged in the *occasional* or *infrequent use* of an automobile other than the one specified in the policy, but not to provide liability coverage in regard to unspecified automobiles which are furnished or available for the insured's frequent or regular use." *Francis v. Farmers Casualty Co.*, 319 N.W.2d 273, 275 (Iowa 1982) (emphasis added). The words "furnished for" connote to provide for; to supply for; to afford for; to provide what is necessary for. *Bringle* at 881. The words "regular use" connote: used according to some established rule or principle; a use steady or uniform in course, practice or occurrence (as contrasted to unexplained or irrational variation); use in conformity with established or prescribed rules. *Id.* at 882.

 No hard and fast rule has been nor can be established for determining the question of what constitutes furnishing for regular use, but each case must stand or fall on the particular facts before the court. *Id.* at 883. We look therefore at the facts in this record. The arrangement was initiated by Throgmartin for his convenience and purpose, that being a place to keep the car while he was in jail. The car was made available to Townsend for a limited period of time (the period of incarceration). Townsend also intended to make limited use of the car during the thirty-day period. Prior to the accident Townsend had only driven the vehicle two times in a four-day period for his own purpose. He had also driven the car home from Throgmartin's home. The arrangement between the parties contemplated use of the automobile by Townsend three or four days a week maximum. (That being the days his wife worked and the family car was not available.) He would use the car to pick up his children on these days if the neighbor did not pick up the children. He would also use the car to go to the grocery store if the other car was not available. The family went to the grocery store two or three times a week. Therefore it was contemplated that the car would be driven short distances every two or three days, or an anticipated fifteen times during the period. The brief history of use is in accord with this arrangement. Although anticipated mileage is not a part of the record, it could not have been great.

The agreement between the parties did not contemplate that the vehicle was to be used regularly. State Farm argues that because Townsend had access to the car at all times that this fact is the sole controlling and determinative issue. We disagree. We must look at the record as a whole. In the *Bingle* case at page 882, relied on by State Farm, the Iowa Supreme Court found a vehicle was furnished by an employer for insured employees' use in the sense that it was supplied, afforded or provided specifically for the employees' use whenever such was required for the purpose for which the vehicle was made available. The purpose for which the vehicle here was made available to Townsend, as shown by the uncontroverted evidence, was to keep the vehicle while Throgmartin was in jail and keep it away from Throgmartin's brothers. The use of the vehicle was a benefit of the arrangement.

 *Bingle* at 882 sets forth certain guideposts for determining the issue of regular use. We have considered these signposts but note that the court's discussion of signposts has evolved from accidents occurring while employees were driving employers' vehicles. No employer-employee relationship exists here. This was a one-time arrangement of limited duration. The use was incidental to the purpose for which the vehicle was taken to Townsend,

to keep it during the owner's incarceration. The use that Townsend was to make of the car was casual or random, not predictable. He would use it *if* his wife had their car and *if* the neighbor did not pick the children up at school and he would use it *if* his wife had the car and *if* he needed to go to the grocery store. The actual usage would be minimal. *Bringle* at 882. If the use for which the vehicle was furnished was an irregular, infrequent or casual one, it would not come within the exclusionary clause and would be covered by the policy. *General Casualty v. Hines*, 261 Iowa at 747–748, 156 N.W.2d at 124. The record here supports a finding by the trial court of infrequent, random, casual or unpredictable use and is not within the exclusionary provisions of the policy.

We have considered *Factory Mutual Liability Insurance Company of America v. Continental Casualty Co.*, 267 F.2d 818, 819–20 (1959) (held three weeks rental by insured tourist of car for her exclusive use during said three-week rental period under rental agreement that put no restriction on the use of said car by said tourist did not constitute regular use of said vehicle by tourist under the terms of her policy).

We distinguish the following cases where coverage was denied: *Allstate Insurance Co. v. Estate of Johnson*, 539 F.Supp. 421, 423 (W.D.Ark.1982) (where insured was principal driver of nonowned automobile); *Bringle* at 882 (where an important consideration was the fact the vehicle was furnished whenever such was required by the insured's employer); *Berry v. State Farm Mutual Automobile Ins. Co.*, 340 F.Supp. 228 (E.D.Va.1972) (under parents coverage where daughter resided in parents' home but was owner's wife and was entrusted with car and she alone could determine when vehicle was put in operation and give permission for its use despite fact wife drove infrequently while husband in military service abroad); *Harrill v. Motor Vehicle-Cas. Co.*, 122 F.Supp. 389, 392 (D.C. 1954) (where insured made regular use of non-owned automobile as opposed to casual or infrequent use).

We affirm the trial court.

AFFIRMED.