926 P.2d 631

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Counterdefendant–Appellant,**

v.

**Kent ROBINSON, as Personal Representative for the Estates of Wayne Robinson and Lois Robinson, Defendants–Cross Defendants–Counterclaimants–Respondents,**

v.

**DIVERSIFIED AUTOSERVICES INCORPORATED d/b/a Practical Rent–A–Car, Defendant–Cross Claimant–Respondent.**

No. 22455.

Supreme Court of Idaho.

Boise, September 1996 Term.

Nov. 8, 1996.

Quane, Smith, Howard & Hull, Boise, for appellant.  John P. Howard argued.

Nevin, Kofoed, Boise, and Hyde, Wetherell, Bray, Haff & French, Chtd., Boise, for respondent.  Bruce S. Bistline argued.

### JOHNSON, Justice

This is an automobile insurance case in which we must apply Florida law.  The primary issues presented are (1) whether an endorsement limiting coverage for rented cars became part of the insurance policy, and, if not, (2) whether the "non-owned car" provisions of the policy excluded coverage for

the rented vehicle. We conclude that the endorsement did not become part of the policy, and that coverage for the rented vehicle was not excluded by the "non-owned car" provisions.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Wayne and Lois Robinson (the insureds) owned two automobiles. Both automobiles were insured through State Farm Mutual Automobile Insurance Company (the insurance company). One automobile was normally garaged in Idaho and was insured under a policy issued by the insurance company (the Idaho policy). The other automobile was normally garaged in Florida and was insured under another policy issued by the insurance company (the Florida policy). When the policies were originally issued, neither contained specific limitations on coverage for rented cars.

The insureds were permanent residents of Florida. In the summer of 1991, while they were temporarily in Idaho, they rented an automobile (the rented automobile) because at the time both of their automobiles were located in Florida. The insureds rented the rented automobile for a period of ninety days and declined insurance coverage through the rental company, Diversified Autoservices Incorporated d/b/a Practical Rent-A-Car, indicating they had insurance under the Florida policy.

On August 27, 1991, the insureds were involved in an accident (the accident) in which both the insureds were killed. At the time of the accident the rented automobile had been driven approximately 540 miles over a period of fifty-six days.

Kent Robinson, the insureds' son, sole heir, and personal representative of their estates (the estates), examined the insureds' insurance records and found them to be neatly and completely maintained. Among the insureds' insurance records, he found a special endorsement limiting coverage for rented cars (the rented car endorsement) relating to the Idaho policy. He found no rented car endorsement relating to the Florida policy.

In December 1991, the insurance company issued a notarized certificate setting forth a declaration of coverage in force under the Florida policy on the day of the accident. The certificate did not say the Florida policy contained a rented car endorsement. The insurance company later issued another certificate for the Florida policy which included a rented car endorsement.

The insurance company's records are maintained by computer, and do not contain the text of the policies. Instead, the computer records consist of number codes referring to standard forms and endorsements. The insurance company reconstructs a policy by using these codes. The insurance company explained the erroneous certificate concerning the Florida policy as a clerical error. According to insurance company's records, the rented car endorsement was added to the Florida policy in 1988 and, according to the computerized process of the company, was mailed to the insureds with their renewal notice that year.

The operator of the other vehicle involved in the accident sued the estates for damages. The insurance company filed a declaratory judgment action asking the trial court to determine whether coverage for the accident exists under either the Idaho or Florida policies. The trial court entered partial summary judgment in favor of the insurance company ruling that no coverage existed under the Idaho policy. The trial court denied summary judgment concerning the Florida policy. Following a court trial, the trial court ruled that the rented car endorsement was not part of the Florida policy and that the use of the rented automobile was not excluded by the non-owned car provisions of the Florida policy as it existed without the rented car endorsement. The trial court awarded attorney fees to the insured pursuant to I.C. § 41–1839. The trial court certified its decision as final pursuant to I.R.C.P. § 54(b), and the insurance company appealed.

## II.

### FLORIDA LAW APPLIES.

Both parties acknowledge that Florida law applies to the issues concerning cover-

age provided by the Florida policy. This is in keeping with the "most significant relationship" test, which this Court has adopted and followed. *Seubert Excavators, Inc. v. Anderson Logging Co.,* 126 Idaho 648, 651, 889 P.2d 82, 85 (1995). The Florida policy was a Florida contract and insured an automobile regularly garaged in Florida. In addition, the insureds were residents of Florida.

In order to determine Florida law on the issues presented in this case, we must first examine the Florida appellate court system, which consists of the Florida Supreme Court and several district courts of appeal. FLA. CONST. art. V. Because there are several district courts of appeal, conflicts can occur between the districts. The jurisdiction of the Florida Supreme Court to resolve these conflicts is limited. FLA. CONST. art. V, § 3(b)(3) and (4). The end result is that conflicts between the district courts of appeal may go unresolved by the Florida Supreme Court.

■ In determining the law of Florida, we will look first to decisions of the Florida Supreme Court. If there are none, we will look to the decisions of the Florida district courts of appeal. In the event of conflict between the district courts of appeal on a question, we will be guided by the majority view, if any, among these courts. If there is no majority view, we will attempt to discern how the Florida Supreme Court would have resolved the conflict.

### III.

### THE RENTED CAR ENDORSEMENT WAS NOT PART OF THE FLORIDA POLICY.

The insurance company asserts that the rented car endorsement was part of the Florida policy. We disagree.

Florida law provides that "[a]bsent a notice to the contrary, the insured is entitled to assume that the terms of the renewed policy are the same as those of the original contract." *Marchesano v. Nationwide Property & Casualty Ins. Co.,* 506 So.2d 410, 413 (Fla.1987). In adherence to this rule, we must consider whether the insureds received notice that the rented car endorsement was part of the terms of the renewed Florida policy.

■ The insurance company presented evidence that its standard business practice was to use computers to insert new endorsements with renewal notices and send the renewal notices to the insured approximately one month prior to the renewal date. The insurance company did not present evidence that the endorsement was actually prepared and mailed to the insureds or how the insurance company verified the computer operation. The only evidence the insurance company offered was a general statement that from time to time there are quality checks on the computerized mailing process.

There appears to be a conflict in the Florida district courts of appeals concerning the effect of a standard business practice. In 1957, the Florida Supreme Court ruled that proof of practice is not sufficient to prove performance of an act on a particular occasion absent some proof that the practice was followed on a particular occasion. *Jarrard v. Associates Discount Corp.,* 99 So.2d 272, 278 (Fla.1957). In 1973, the Florida Supreme Court ruled that "a general presumption has arisen in the courts that the ordinary course of business or conduct was followed in a particular case absent a contrary showing." *Brown v. Giffen Indus., Inc.,* 281 So.2d 897, 900 (Fla.1973). *Brown* was an insurance case in which one of the issues was whether a particular letter had been mailed. The Florida Supreme Court reasoned that to expect evidence of actual mailing would be "totally unreasonable." *Id.*

In 1974, the Florida District Court of Appeals for the Third District, relying on *Jarrard,* found that the bare testimony of an insurer concerning the practice of mailing a notice to policyholders is insufficient to prove mailing absent proof that the practice was followed in the particular instance. *Bernstein v. Liberty Mut. Ins. Co.,* 294 So.2d 63, 64 (Fla.Dist.Ct.App.1974). In 1987, the Florida District Court of Appeals for the Fifth District, relying on *Brown,* held that evidence that a practice was followed in the particular instance at issue is not required. *Progressive Am. Ins. Co. v. Kurtz,* 518 So.2d

1339, 1341 (Fla.Dist.Ct.App.1987). The court explained its ruling, as follows:

> *Bernstein* relied on *Jarrard v. Associates Discount Corp.* However, *Brown v. Giffen Industries, Inc.* held that mail properly addressed, stamped, and mailed is presumed to have been received by the addressee, and proof of general office practice can satisfy the requirement of due mailing. Although *Brown* does not directly overrule *Jarrard,* this court and another district court of appeal have recognized that *Brown* appears to have abrogated the *Jarrard* requirement of separate evidence that customary practice was followed in a specific case.

*Id.* (citations omitted).

*Brown* and *Progressive* are consistent with Florida statutory law, which provides as follows:

> Evidence of the routine practice of an organization, **whether corroborated or not** and regardless of the presence of eyewitnesses, is admissible to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice.

Fla. Stat. § 90.406 (1995) (emphasis added).

■ We conclude that in Florida, evidence of a business practice is sufficient to create a presumption that the practice was followed. Evidence of conformity in the particular instance is not required. In the present case, the insurance company presented sufficient evidence of its practice of inserting endorsements with renewal notices and mailing them to policyholders to entitle it to a presumption that the insureds received the rented car endorsement.

■ Under Florida law, a presumption merely shifts the burden of going forward with the evidence to contradict or rebut the fact presumed. Fla.Stat. §§ 90.302, 303 (1995); *Gulle v. Boggs,* 174 So.2d 26, 28–29 (Fla.1965). When the party against whom the presumption is directed produces sufficient evidence to rebut the presumed fact, the presumption "dissipates" and the trier of fact must decide the issue without aid of the presumption. *Gulle,* 174 So.2d at 29.

■ The estates contend that the testimony of Kent Robinson rebutted the presumption. Based on the testimony of Kent Robinson and the Florida policy he found in the insureds' records, the trial court made the following findings of fact:

12. After [the insureds'] death, Kent Robinson, their son and sole heir, was appointed personal representative of [the insureds'] their estates, and examined their records.

13. The insurance records of [the insureds] were neatly and completely maintained. The personal representative discovered the Idaho policy with the special endorsement. He discovered the Florida policy, but with no endorsements pertaining to rental vehicles.

14. The personal representative discovered billings and renewal notices from [the insurance company] through the time of the accident. None of the billings or renewal notices included any references to endorsements.

These facts rebut the presumption that the insureds received the rented car endorsement. Therefore, the presumption "dissipates" and the trial court's duty was to weigh the evidence and decide whether the insureds received the rented car endorsement.

In addition to the facts contained in the findings above, the trial court also had the evidence concerning the insurance company's two certifications, first that the Florida policy did not contain the rented car endorsement, and the second that it did. The insurance company explained the first certification as a clerical error.

The trial court concluded, as follows:

3. Bare testimony of insurer's expected or general business practice with respect to computer generated endorsements, to the effect that such endorsements should have been routinely generated and mailed to the insureds as part of the renewal notification, is not sufficient to establish that the endorsement was, in fact, mailed. *Bernstein v. Liberty Mutual Insurance Company,* 294 So.2d 63 (Fla.App.1974).

4. I am persuaded by the proof that the Robinsons' files were neatly and com-

pletely maintained; that the Florida endorsement was not within the Robinsons' files, although the Idaho endorsement was; that there was no other indicia in the Robinsons' files that the restrictive endorsement had been added to the Florida policy. Lois Robinson referred to the Florida policy by number when asked of the insurance in force, although she had both [an] Idaho and a Florida policy available to her. There is at least some inference from this act that she thought the Idaho policy limited coverage for rental vehicles while the Florida policy did not.

5. I conclude that the plaintiff failed to prove that the restrictive endorsement, 6025BE, was part of the Florida policy at the time of the accident in question. On the evidence offered, I cannot find that it was not at least equally probable that a mistake was made here, too, and the endorsement was not mailed out as expected.

Our review of Florida law above indicates that the trial court's reliance on *Bernstein* was misplaced. Nevertheless, the trial court went on to weigh the evidence in concluding that the insurance company did not prove that the notice was mailed. Therefore, we conclude that the rented car endorsement did not become part of the Florida policy.

## IV.

### THE FLORIDA POLICY, WITHOUT THE RENTED CAR ENDORSEMENT, DOES NOT EXCLUDE COVERAGE FOR THE RENTED CAR.

The insurance company asserts that even without the rented car endorsement the Florida policy excludes coverage for the rented automobile. We disagree.

The Florida policy without the rented car endorsement (the original Florida policy) contains the following provisions relating to "non-owned cars:"

*Non-owned car*—means a *car* not:
1. owned by,
2. registered in the name of, or
3. furnished or available for the regular or frequent use of:

*you, your spouse,* or any *relatives.*

The use has to be within the scope of consent of the owner or *person* in lawful possession of it.

. . . .

The liability coverage extends to the use, by an *insured* of a *newly acquired car,* a *temporary substitute car* or a *non-owned car.* (Emphasis in original).

Based on the facts in the present case, the trial court concluded that "the rental of a vehicle from a temporary rental agency for a period of time measured in days, for use while the couple was in Idaho and away from their regular vehicles, and away from their regular place of residence, did not constitute the regular and frequent use of a non-owned vehicle."

■ In reviewing the trial court's ruling, we must first determine whether, under Florida law, the question of "regular or frequent use" is a factual question or a legal conclusion. Several Florida cases have addressed the issue of "regular use." *Stack v. Surdacki,* 479 So.2d 228 (Fla.Dist.Ct.App. 1985); *United States Sugar Corp. v. Nationwide Mut. Ins. Co.* 475 So.2d 1350 (Fla.Dist. Ct.App.1985); *Lumbermens Mut. Casualty Co. v. Lesley,* 433 So.2d 1299 (Fla.Dist.Ct. App.1983); *Duprey v. United Servs. Auto. Ass'n,* 254 So.2d 57 (Fla.Dist.Ct.App.1971); *Insurance Co. of N. Am. v. Ready,* 240 So.2d 311 (Fla.Dist.Ct.App.1970); *O'Brien v. Halifax Ins. Co. of Mass.,* 141 So.2d 307 (Fla.Dist. Ct.App.1962). In *Carter v. Peninsular Fire Ins. Co.,* 411 So.2d 960 (Fla.Dist.Ct.App. 1982), the court addressed the issue of "occasional and infrequent" use.

These cases make it clear to us that the Florida courts would treat the phrase "regular or frequent use" as unambiguous and, therefore, this language should not be strictly construed in favor of the insured and against the insurer. *E.g., Stack,* 479 So.2d at 229; *Lumbermens Mut. Casualty Co.,* 433 So.2d at 1300; *Carter,* 411 So.2d at 962; *O'Brien,* 141 So.2d 307 at 308. In *United States Sugar Corp.,* the court considered "the time, place, and purpose for which the automobile was to be used in determining whether the automobile was furnished for the regular use of the insured." 475 So.2d at 1352.

The more recent of these cases also convince us that where the underlying facts are not in dispute, as is the circumstance in the present case, the Florida courts would treat the question of "regular or frequent use" as a question of law. *E.g., Stack,* 479 So.2d at 229; *United States Sugar Corp.,* 475 So.2d at 1352; *Lumbermens Mut. Casualty Co.,* 433 So.2d at 1300–01. That is, after the facts are ascertained, the determination of the application of the policy to those facts requires a legal conclusion, not a finding of fact.

In *United States Sugar Corp.,* the court noted: "The purpose of a 'non-owned automobile clause' is to provide coverage to the insured while engaged in infrequent or casual use of an automobile other than the one described in the policy." 475 So.2d at 1352. Although the policy provision at issue there referred only to "regular use" and did not add "or frequent use," we conclude that the court in *United States Sugar Corp.* correctly stated the purpose of the "non-owned car" clause in the Florida policy at issue in the present case.

As a matter of Florida law, in determining whether the "non-owned car" clause of the Florida policy covered the accident, we consider the time, place, and purpose of the insureds' use of the rented automobile. Despite the number of days and miles involved in the insureds' use of the rented automobile, they were only temporarily in Idaho during the use, and their own automobiles were in Florida and were not driven during the period the insureds used the rented car. Considering the purpose of a "non-owned car" clause in Florida, we conclude that the insureds' use of the rented car was infrequent or casual use.

## V.

## CONCLUSION.

We affirm the trial court's judgment in favor of the insureds.

We award costs on appeal to the insureds. We award attorney fees on appeal to the insureds pursuant to I.C. § 41–1839.

McDEVITT, C.J., and TROUT, SILAK and SCHROEDER, JJ., concur.