563 S.E.2d 825

**AMERICAN STATES INSURANCE COMPANY, Plaintiff Below, Appellee,**

v.

**Jack TANNER; June Tanner; Louise Rietz Nelson, Administratrix of the Estate of Alvin B. Nelson; State Farm Insurance Company; and Enterprise Rent–A–Car of Kentucky, Defendants Below,**

**Rachel Neal Handel, Administratrix of the Estate of Oliver Neal, Jr., Defendant Below, Appellant.**

No. 29991.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 2002.

Decided April 26, 2002.

---

William L. Frame, Esq., Wilson, Frame, Benninger & Metheney, P.L.L.C., Morgantown, West Virginia, Attorney for the Appellant.

Avrum Levicoff, Esq., Emily Hicks, Esq., Brown & Levicoff, P.C., Pittsburgh, Pennsylvania, Attorneys, for the Appellee.

DAVIS, Chief Justice:

The appellant herein and defendant below, Rachel Neal Handel, administratrix of the Estate of Oliver Neal, Jr. [hereinafter referred to as "the Neal Estate"], appeals from an order entered November 27, 2000, by the Circuit Court of Monongalia County. In that order, the circuit court granted summary judgment to the appellee herein and plaintiff below, American States Insurance Company [hereinafter referred to as "American States"], and found that the rental vehicle involved in the underlying accident was not covered by the "regular use" provision of the American States policy of motor vehicle insurance. In its appeal to this Court, the Neal Estate complains that the circuit court's decision was erroneous. Upon a review of the parties' arguments, the record submitted for appellate consideration, and the pertinent authorities, we conclude that Mrs. Tanner's use of the rental vehicle at issue herein did not constitute regular use. Accordingly, we reverse the decision of the Circuit Court of Monongalia County and remand this case for further proceedings consistent with this Opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On June 3, 1998, a fatal accident occurred when June Tanner, defendant below [hereinafter referred to as "Mrs. Tanner"], lost control of the rental vehicle she was driving and crashed into the front door of a Morgantown, West Virginia, drug store. As a result of this collision, one store patron, Oliver Neal,

Jr., was fatally injured, and another customer, Alvin B. Nelson, was seriously injured.[1] Prior to this incident, in early May, 1998, Mrs. Tanner was involved in another car accident, allegedly caused by the other driver involved therein, which rendered her automobile, a Chevrolet Astrovan, undrivable. While the Astrovan was being repaired, the other driver's insurer, Harleysville Insurance, provided Mrs. Tanner with the rented Range Rover involved in the accident underlying the instant appeal. At the time of the June 3, 1998, incident, Mrs. Tanner had been the sole operator of the Range Rover, and she had been driving this vehicle for approximately 22 days.

As a result of this crash, both estates filed claims against Mrs. Tanner alleging that she had negligently operated her rental vehicle. Payments subsequently were made to the injured parties and/or their representatives by various insurance companies providing coverage for the Tanner vehicle. State Farm, which insured Mrs. Tanner's Astrovan and deemed the Range Rover to be a temporary substitute vehicle therefor, paid its full policy limits[2] to each Estate in exchange for a release of the Tanners' personal liability for the fatal accident. Similarly, Enterprise Rent–A–Car of Kentucky [hereinafter referred to as "Enterprise"], which insured the Range Rover as part of its rental agreement, paid its policy limits[3] to both the Neal Estate and the Nelson Estate. Following these distributions, Mrs. Tanner and the two Estates' representatives sought additional insurance monies from the American States policy insuring Mrs. Tanner's husband's motor vehicle, a Chevrolet Lumina.

American States denied coverage under this factual scenario and, on January 4, 1999, filed a declaratory judgment action in the Circuit Court of Monongalia County.

Through this action, American States sought to ascertain whether it was legally bound and obligated to provide insurance for this occurrence, denying that it was required to provide coverage based upon the "regular use" exclusion contained in Mr. Tanner's policy. This exclusion states that

> B. We [American States] do not provide Liability Coverage for the ownership, maintenance or use of:
>
> . . . .
>
> 2. Any vehicle, other than "your covered auto," which is:
>
> a. owned by you; or
>
> b. *furnished or available for your regular use.*
>
> 3. Any vehicle, other than "your covered auto," which is:
>
> a. owned by a "family member"; or
>
> b. *furnished or available for the regular use of a "family member."*

(Emphasis added).

Subsequent to American States' filing, the parties entered into a stipulation of facts, and American States filed a motion for summary judgment. By order entered November 27, 2000, the circuit court granted American States' motion, denying the claims of State Farm, the Tanners, and the Neal Estate to the contrary. In awarding summary judgment, the circuit court determined that the Range Rover was not a "regular use" vehicle as contemplated by Mr. Tanner's motor vehicle insurance policy providing coverage for his Lumina as it did not serve as a substitute or replacement therefor. Applying this reasoning, the circuit court likewise found that the American States policy did not cover Mrs. Tanner's use of the Range Rover. Moreover, the circuit court concluded that W. Va.Code § 33–6–29(b) (1992) (Repl.Vol.2000)

---

1. The parties represent that Mr. Nelson subsequently died as a result of the injuries he received, and his Estate was named as a party defendant to the proceedings underlying this appeal. For ease of reference, Mr. Nelson will subsequently be referred to as the "Nelson Estate".

2. The parties represent that State Farm paid $100,000 to both the Neal and the Nelson Estates.

3. It is reported that Enterprise carried only minimum limits of liability coverage which resulted in payments of $20,000 to each Estate. This distribution likewise was accompanied by a release of the Tanners' personal liability for the fatal accident.

did not render the American States policy applicable to the accident herein because "the Legislature did not anticipate the statute to require an insurance company to provide coverage for a rental vehicle that is being used as a replacement for a vehicle not covered by the policy."

From these rulings of the circuit court, the Neal Estate appeals to this Court.

## II.

## STANDARD OF REVIEW

The instant appeal comes to this Court from an order granting summary judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). In other words, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). When this Court reviews an order granting summary judgment, we employ a plenary review. "A circuit court's entry of summary judgment is reviewed *de novo."* Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Mindful of this standard of review, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, the Neal Estate presents a single issue for our resolution: does a "regular use" exclusion, in a motor vehicle insurance policy that insures one automobile and provides coverage to the policy-

holder's spouse,[4] preclude coverage for a rental vehicle driven by said spouse as a replacement vehicle for a different automobile insured under a separate policy of motor vehicle insurance.

We begin our inquiry with a review of elementary insurance law. In general, " '[l]anguage in an insurance policy should be given its plain, ordinary meaning.' Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.,* 176 W.Va. 430, 345 S.E.2d 33 (1986)." Syl. pt. 2, *Russell v. State Auto. Mut. Ins. Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992). Thus, " '[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. pt. 1, *Russell,* 188 W.Va. 81, 422 S.E.2d 803. *Accord* Syl. pt. 5, *Ward v. Baker,* 188 W.Va. 569, 425 S.E.2d 245 (1992); Syl. pt. 3, *Soliva,* 176 W.Va. 430, 345 S.E.2d 33.

Insofar as exclusions contained in policies of insurance are concerned, we previously have held that "[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. pt. 3, *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989). This sentiment also has been expressed by the West Virginia Legislature in W. Va.Code § 33-6-31(k) (1995) (Repl.Vol. 1996),[5] which provides that "this section [shall not] be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged."[6] Never-

---

**4.** Mr. Tanner's policy of motor vehicle insurance with American States provided coverage to Mrs. Tanner as his spouse. *See* American States Preferred Insurance Company, Personal Automobile Policy, Policy Number 06-47-009933-4, p. 3, § A ("Throughout this policy, 'you' and 'your' refer to: 1. The 'named insured' shown in the declarations; and 2. The spouse if a resident of the same household."). Likewise, Mrs. Tanner would be covered by Mr. Tanner's American States policy as a family member of his household. *Id.,* p. 3,

§ G (" 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household[.]").

**5.** The current version of this statute is identical to its predecessor. *See* W. Va.Code § 33-6-31(k) (1998) (Repl.Vol.2000).

**6.** During its First Regular Session of 2002, the West Virginia Legislature clarified this statutory provision. *See* H.D. 4670, 75th Leg., 1st Reg.

theless, "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). For this reason, then, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 7, *id.*

Applying these tenets to the instant controversy, we find it necessary to consult the jurisprudence of other courts that have resolved the issue of first impression presented by the instant appeal: what constitutes regular use of a vehicle as that term is used in insurance policy exclusions? "The words 'regular use' suggest a principal use as distinguished from a casual or incidental use .... 'Regular use' means 'habitual use' as opposed to occasional or incidental use." *Crum & Forster Pers. Ins. Co. v. Travelers Corp.*, 428 Pa.Super. 557, 561, 631 A.2d 671, 673 (1993) (internal quotations and citations omitted). Another tribunal likewise has determined that "[t]he words 'regular use' connote: used according to some established rule or principle; a use steady or uniform in course, practice or occurrence (as contrasted to unexplained or irrational variation); use in conformity with established or prescribed rules." *State Farm Mut. Auto. Ins. Co. v. Townsend*, 361 N.W.2d 332, 335 (Iowa Ct. App.1984) (citation omitted). *See also Volpe v. Prudential Prop. & Cas. Ins. Co.*, 802 F.2d 1, 4 (1st Cir.1986) ("When facts have shown use sufficiently frequent, systematic or authoritative as to have made it reasonable for an insurer to expect an extra premium to insure an additional car, ... 'regular use' [has been found]." (citations omitted)); Syl. pt. 5, *Central Sec. Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 681 P.2d 15 (1984) (" 'Regular'

use is defined as continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use."). Distinguishable from "regular use," however, is "limited" use or availability,[7] "casual driving," [8] "occasional or infrequent use," [9] and "irregular, .... infrequent, random, casual or unpredictable use." [10]

Moreover,

the phrase "furnished for regular use" as used in context does not imply the manner of use, that is, putting the automobile to the same uses to which an insured would use his own automobile, but implies a right to the regular use of the automobile in the sense that there is an expressed or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile or perhaps any automobile of the other at such times as he desired, if available.

*The term "furnished for regular use" does not embody the term "for temporary use," but describes the antithesis thereof.* It, therefore, expresses no thought of excluding protection in those situations where the use is but for a single occasion or single purpose.

*George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co.*, 220 Or. 520, 526, 349 P.2d 789, 792 (1960) (emphasis added). *See also Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F.Supp. 700, 706 (E.D.Pa.1997) (observing that "indicia of regular use [includes]: (1) blanket permission to use the car rather than having to request permission each time and (2) an available set of keys" (citation omitted)), *aff'd*, 149 F.3d 1165 (3d Cir.1998) (unpublished table decision); *United States Sugar Corp. v. Nationwide Mut. Ins. Co.*, 475 So.2d 1350, 1352 (Fla.Dist.Ct.App.1985) (concluding that determination of regular use

---

Sess. (W.Va.2002) (enacted) (amending W. Va. Code § 33–6–30 to explain practical effect of W. Va.Code § 33–6–31(k)).

7. *Mercury Ins. Group v. Checkerboard Pizza*, 15 Cal.Rptr.2d 657, 659, 12 Cal.App.4th 495, 498 (1993).

8. *Lumbermens Mut. Cas. Co. v. Pulsifer*, 41 F.Supp. 249, 251 (D.Me.1941).

9. *Liberty Mut. Ins. Co. v. Sentry Ins.*, 515 N.Y.S.2d 557, 558, 130 A.D.2d 629, 630 (mem.), *modified*, 522 N.Y.S.2d 462, 135 A.D.2d 508 (1987).

10. *State Farm Mut. Auto. Ins. Co. v. Townsend*, 361 N.W.2d 332, 336 (Iowa Ct.App.1984) (citation omitted).

should consider "the time, place, and purpose for which the automobile was to be used" by the insured (citation omitted)). Thus, regular use also includes a situation wherein an insured "driv[es] cars usually at hand which he could take instead of his own, and which he would be likely to use often," [11] as well as the scenario where the insured "had no other car to drive for the personal use of himself and his family" but for the vehicle under scrutiny.[12]

Of particular relevance to the instant appeal, it additionally has been suggested that "[a] short term rental agreement does not qualify as 'regular use' under the generally accepted definition of that term." *Mercury Ins. Group v. Checkerboard Pizza*, 15 Cal. Rptr.2d 657, 659, 12 Cal.App.4th 495, 498 (1993). *See also Strickland v. State Farm Mut. Auto. Ins. Co.*, 133 N.C.App. 71, 75, 514 S.E.2d 304, 306 (1999) (refusing to find that "a rental car, agreed by the parties to be a temporary substitute ..., is a vehicle furnished for [the insured's] regular use"). *Cf. Shoemaker*, 965 F.Supp. at 701–02 (noting insurance policy provision language stating that " '[f]urnished for regular use does not include a motor vehicle rented from a rental company for less than 28 days' "); *Powers v. Detroit Auto. Inter–Insurance Exch.*, 427 Mich. 602, 618 n. 5, 398 N.W.2d 411, 418 n. 5 (1986) (quoting insurance policy language that excluded from coverage " '[a] non-owned Automobile ... rented to or leased by the named Assured or relative for a consecutive period of more than thirty days' "), *decision abrogated by Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 460 Mich. 558, 596 N.W.2d 915 (1999).[13]

Once the definitional dilemma of the nature of regular use has been resolved, though, courts examining such exclusions continue to have difficulty establishing a bright line test applicable to every conceivable case. Rather, the general consensus is to consider, on a case-by-case basis, whether the facts of a particular controversy suggest regular use of the subject vehicle.

Although it is not the use of ambiguous language which causes court[s] to disagree about the meaning of the exclusionary language, "[c]ourts struggle with its application because each case must be decided on its own facts and circumstances[,] and therefore, its application is a struggle. Its meaning is not."

*Crum & Forster*, 428 Pa.Super. at 561, 631 A.2d at 673 (quoting *Central Sec. Mut. Ins. Co. v. DePinto*, 9 Kan.App.2d 85, 87, 673 P.2d 122, 124 (1983), *aff'd*, 235 Kan. 331, 681 P.2d 15 (1984) (additional citation omitted)). *Accord Shoemaker*, 965 F.Supp. at 704 ("Where courts have had difficulty is not in the definition of the term ['regular use'], but in its application."). In other words, "[w]hether a car has been furnished for regular use within the meaning of the exclusionary provision is determined by the particular facts and circumstances in each case. ... Factors to be considered, however, include the general availability of the vehicle and the frequency of its use by the insured." *Liberty Mut. Ins. Co. v. Sentry Ins.*, 515 N.Y.S.2d 557, 558, 130 A.D.2d 629, 630 (mem.), *modified*, 522 N.Y.S.2d 462, 135 A.D.2d 508 (1987) (citations omitted). *See also Townsend*, 361 N.W.2d at 335 ("No hard and fast rule has been nor can be established for determining the question of what constitutes furnishing for regular use, but each case must stand or fall on the particular facts before the court." (citation omitted)); *North Carolina Farm Bureau Mut. Ins. Co. v. Warren*, 326 N.C. 444, 446, 390 S.E.2d 138, 140 (1990) (" 'No absolute definition can be established for the term "furnished for regular use." Each case must be decided on its own facts and circumstances.' " (quoting *Whaley v. Great Am. Ins. Co.*, 259 N.C. 545, 552, 131 S.E.2d 491, 496–97 (1963) (additional quotations and citations omitted))).

The exclusion at issue in the case *sub judice* is nearly identical to those consid-

---

11. *Pulsifer*, 41 F.Supp. at 251.

12. *Campbell v. Aetna Cas. & Sur. Co.*, 211 F.2d 732, 736 (4th Cir.1954).

13. For further discussion of what does or does not constitute regular use of a motor vehicle, see generally David B. Harrison, Annotation, *When is Automobile Furnished or Available for Regular Use within "Drive Other Car" Coverage of Automobile Liability Policy*, 8 A.L.R.4th 387 (1981).

ered by the courts we have looked to for guidance. In the policy issued to Mr. Tanner, American States specifically excludes from coverage "[a]ny vehicle, other than 'your covered auto,' which is ... furnished or available for your regular use ... [or] furnished or available for the regular use of a 'family member.'" Based upon the foregoing authorities and their definitional guidance, we find that the language of American States' "regular use" exclusion is plain and unambiguous and that further judicial interpretation or construction thereof is not warranted.[14] *See* Syl. pt. 1, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803. For the purpose of applying this exclusion to the facts of the instant appeal, we hold that where a policy of motor vehicle insurance contains an exclusion exempting from liability coverage a vehicle that is furnished or available for the insured's or a family member's regular use, a determination of whether the use of the subject vehicle has been regular must be made by examining the pertinent facts on a case-by-case basis.[15] We hold further that factors that may be considered in determining whether a vehicle has been furnished or available for the insured's or a family member's regular use include, but are not limited to, (1) the general availability of the vehicle; (2) the frequency of the use, *i.e.*, habitual, frequent, or principal use as opposed to temporary, casual, or occasional use; (3) the restrictions, if any, placed upon the vehicle's use; and (4) the nature of the use, *i.e.*, whether the vehicle was used for a single occasion or limited purpose.

■ Mindful of these holdings, we turn now to the facts of the case *sub judice*. The parties do not dispute that Mrs. Tanner ac-

quired the use of the Range Rover when her Astrovan vehicle was damaged in an accident and required repairs. Moreover, it is not contested that the Range Rover was a rental car and that it was not owned by Mr. or Mrs. Tanner. Applying the first test of regular use, we must determine whether the Range Rover was generally available to Mrs. Tanner. We find that it was not. The Range Rover was rented to Mrs. Tanner after her Astrovan had been rendered undrivable and as a result of the ensuing repairs. Therefore, the Range Rover was available to Mrs. Tanner only for a finite period of time, *i.e.*, while her Astrovan was being repaired. While it is true that Mrs. Tanner retained physical possession of the Range Rover during this period, her use thereof nevertheless was restricted by the terms of her rental agreement with Enterprise.

Next, we must determine whether the frequency of Mrs. Tanner's use of the Range Rover constitutes regular use. On this point, the parties claim that Mrs. Tanner was the sole operator of the Range Rover, but it is unclear as to how often Mrs. Tanner actually used this car. Assuming *arguendo* that Mrs. Tanner made frequent, habitual, or even principal use of this vehicle, this factor, alone is not solely determinative of the regular use issue. Rather, all facts and circumstances must be considered when addressing such an inquiry. *See, e.g., Crum & Forster*, 428 Pa.Super. at 561, 631 A.2d at 673.

The third factor to consider in determining whether use of a motor vehicle has been regular is whether any restrictions were placed on the insured's use of the subject vehicle. This criterion can undoubtedly be answered with a resounding yes. According

---

14. Although not directly on point and not addressing the precise issue presented herein, this Court previously has upheld an insurance policy exclusion containing similar "regular use" language. *See* Syl. pt. 2, *Thomas v. Nationwide Mut. Ins. Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992) (applying "family use exclusion" analysis and considering availability of underinsured motorist benefits).

15. Given the factual nature of such an inquiry, a determination of whether the evidence presented constitutes regular use is a question of fact to be resolved by a jury. *See Crum & Forster Pers. Ins. Co. v. Travelers Corp.*, 428 Pa.Super. 557, 561–62,

631 A.2d 671, 673 (1993) (" 'Whether a vehicle is covered, or whether it is excluded under a provision denying coverage where such vehicle is furnished for the insured's (or family member's) regular use, normally becomes a jury question.' " (quoting 6C John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4455, at 565 (1979) (footnote omitted))). *See also Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 488, 509 S.E.2d 1, 12 (1998) (concluding that "substantial questions of material fact remain for jury resolution" as to whether facts satisfied conditions of insurance policy exclusions).

to the terms of Mrs. Tanner's rental agreement with Enterprise, numerous restrictions were placed upon her use of the Range Rover. Among other things, the contract permitted Mrs. Tanner to drive the Range Rover for only 100 miles per day; she was not permitted to drive the vehicle out of the State of West Virginia; and other motorists could not drive the Range Rover until Enterprise had granted permission for them to do so. These limitations on use are hardly consistent with an insured's unfettered ability to regularly use a vehicle according to his/her whims, needs, or desires. Moreover, it goes without saying that Mrs. Tanner's breach of these rental contract conditions could have exposed her to potential liability to Enterprise with which she would not have had to concern herself vis-a-vis her own, personal automobile, which was not subject to such restrictions on use.

Finally, the nature of the use is instructive to determining whether a particular vehicle's use has been regular. Under the facts of this case, it is clear that Mrs. Tanner's use of the Range Rover was for a specific, limited purpose: as a temporary substitute vehicle while her customary car was being repaired. But for the accident damaging the Astrovan, Mrs. Tanner would not have needed a replacement car and would not have rented the Range Rover. Furthermore, it can be inferred that, following the completion of such repairs, Mrs. Tanner fully intended to return the Range Rover to Enterprise.

Based upon the foregoing factual analysis,[16] we conclude that Mrs. Tanner's use of the Range Rover was not regular, and, therefore, the regular use exclusion does not apply to the instant claim.[17] Accordingly, we reverse the circuit court's order and remand

16. Based upon our resolution of this case in this manner, it is unnecessary, at the present time, to address the parties' remaining arguments. Nevertheless, should a case arise in which a regular use exclusion is found to preclude coverage, it would then be necessary to ascertain the extent to which such a provision would be enforceable in light of the Legislature's specific extension of liability coverage to non-owned automobiles and rented vehicles. *See* W. Va.Code § 17D–4–12(c) (1991) (Repl.Vol.2000) ("Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance."); W. Va. Code § 33–6–29(b) (1992) (Repl.Vol.2000) ("Every policy or contract of liability insurance which insures a motor vehicle licensed in this state with collision, comprehensive, property or bodily injury coverage shall extend these coverages to cover the insured individual while operating a motor vehicle which he or she is permitted to use by a person, firm or corporation that owns the vehicle and is engaged in the business of selling, repairing, leasing or servicing motor vehicles....").

17. This result is consistent with the decisions of other courts that have determined that temporary use of a rental car does not constitute regular use thereof. *See, e.g., Factory Mut. Liab. Ins. Co. of America v. Continental Cas. Co.,* 267 F.2d 818 (5th Cir.1959) (per curiam) (holding that tourist's use of rental car during three-week rental period did not constitute regular use); *Continental Cas. Co. v. Suttenfield,* 236 F.2d 433 (5th Cir.1956) (declining to find regular use where insured rented vehicle to drive during business trip); *Mercury Ins. Group v. Checkerboard Pizza,* 15 Cal.Rptr.2d 657, 12 Cal.App.4th 495 (1993) (concluding that use of rental car while owned and insured car was being repaired did not constitute regular use for purposes of exclusion); *Comunale v. Traders & Gen. Ins. Co.,* 253 P.2d 495, 116 Cal.App.2d 198 (1953) (affirming lower court's finding of no regular use where insured borrowed brother's vehicle solely for transportation to and from work and insured reimbursed him for such use of vehicle); *State Farm Mut. Auto. Ins. Co. v. Robinson,* 129 Idaho 447, 926 P.2d 631 (1996) (finding coverage for insureds' rental vehicle that they operated while they were on vacation and concluding that such use, during a period of 56 days and a duration of 540 miles, was not regular use); *Vern v. Merchants Mut. Cas. Co.,* 118 N.Y.S.2d 672, 21 Misc.2d 51 (1952) (finding no regular use where insured rented car for one month to use during out-of-town business trip); *Strickland v. State Farm Mut. Auto. Ins. Co.,* 133 N.C.App. 71, 75, 514 S.E.2d 304, 306 (1999) (determining that insured's use of rental car, for which insured paid and which was a temporary substitute while insured's car was being repaired, was not "a vehicle furnished for [the insured's] regular use"); *George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co.,* 220 Or. 520, 349 P.2d 789 (1960) (noting that temporary use of a rental vehicle is inconsistent with regular use). *But see Liberty Mut. Ins. Co. v. Sentry Ins.,* 515 N.Y.S.2d 557, 130 A.D.2d 629 (mem.) (concluding that insured's use of rental vehicle was regular where rental period was of unlimited duration and no restrictions were placed upon insured's use of rental vehicle), *modified,* 522 N.Y.S.2d 462, 135 A.D.2d 508 (1987).

this case for further proceedings consistent with this Opinion.

IV.

**CONCLUSION**

In conclusion, we find that Mrs. Tanner's use of the Range Rover did not constitute regular use so as to preclude the Estate's recovery from Mr. Tanner's American States policy. Accordingly, we reverse the November 27, 2000, order of the Circuit Court of Monongalia County, and remand this case for further proceedings consistent with this Opinion.

Reversed and Remanded.