584 S.E.2d 158

Steven TACKETT, Plaintiff
Below, Appellant,

v.

AMERICAN MOTORISTS INSURANCE
COMPANY, a Foreign Corporation,
Defendant Below, Appellee.

No. 30633.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 15, 2003.

Decided Feb. 28, 2003.

Concurring and Dissenting Opinion of Chief
Justice Starcher July 11, 2003.

John J. Polak, Esq., Rose & Atkinson, Charleston, West Virginia, Attorney for the Appellant.

Robert A. Lockhart, Esq., David R. Schuda, Esq., Schuda & Associates, PLLC, Charleston, West Virginia, Attorneys for the Appellee.

DAVIS, Justice:

The appellant herein and plaintiff below, Steven Tackett [hereinafter referred to as "Mr. Tackett"], appeals from an October 30, 2001, order entered by the Circuit Court of Cabell County. In that order, the circuit court, ruling in favor of the appellee herein and defendant below, American Motorists Insurance Company [hereinafter referred to as "American Motorists"], granted summary judgment to American Motorists and denied Mr. Tackett's claim for such relief. The court concluded that, although American Motorists had defended its insured, Mr. Tackett's former employer, in a related lawsuit arising from Mr. Tackett's alleged intentional sexual misconduct in his capacity as

an employee, it was not similarly required to provide a defense for Mr. Tackett in said proceeding. On appeal to this Court, Mr. Tackett claims that the circuit court erred and that American Motorists was obligated to provide him legal representation in the related proceeding. Upon a review of the parties' arguments, the record submitted on appeal, and the pertinent authorities, we conclude that American Motorists had a duty to defend Mr. Tackett in the aforementioned lawsuit. Accordingly, we reverse the circuit court's October 30, 2001, order finding no such duty existed and remand this case for further proceedings consistent with this Opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts upon which the circuit court based its decision are as follows. In April, 1997, Mr. Tackett was employed as an assistant manager by Gadzooks, Inc., a nationwide clothing retailer with a store in the Huntington Mall. On or about April 19, 1997, K.M.L.[1] [hereinafter referred to as "Miss L."], a fifteen-year-old female, was a customer at said Gadzooks store and was assisted by Mr. Tackett. In a complaint filed September 30, 1997, by Miss L. and her parents in the Circuit Court of Cabell County against Gadzooks and Mr. Tackett, Miss L. alleged that, while she was shopping at Gadzooks, Mr. Tackett subjected her to various acts of sexual misconduct:

On or about April 19, 1997, the Plaintiff [K.M.L.], while shopping in the Defendant's [Gadzooks'] Store, was attended to by the Defendant, Tackett. At said time and place, the Plaintiff, [K.M.L.], was fifteen (15) years of age. At said time and place, and while the Plaintiff was within the said retail Store, the Defendant, Tackett, while in the course and scope of his

1. Due to the sensitive nature of the matters by which Ms. L. is involved in the instant proceeding, we adhere to our usual practice and refer to this individual by her initials only. See, e.g., State v. Leep, 212 W.Va. 57, 62 n. 6, 569 S.E.2d 133, 138 n. 6 (2002); In re Emily B., 208 W.Va. 325, 329 n. 1, 540 S.E.2d 542, 546 n. 1 (2000);

In re Michael Ray T., 206 W.Va. 434, 437 n. 1, 525 S.E.2d 315, 318 n. 1 (1999); State ex rel. Diva P. v. Kaufman, 200 W.Va. 555, 559 n. 2, 490 S.E.2d 642, 646 n. 2 (1997); In re Tiffany Marie S., 196 W.Va. 223, 226 n. 1, 470 S.E.2d 177, 180 n. 1 (1996).

employment, sexually harassed, molested, and violated the infant Plaintiff, by, among other things, making sexual innuendos to the Plaintiff; touching the Plaintiff on various parts of her body, including her breasts; entering the sanctity of her dressing room, when the said infant Plaintiff was disrobed while trying on clothes; reaching his hands under the blouse that the Plaintiff was trying on; and by doing all of the above in front of another individual.

*K.M.L. v. Gadzooks, Inc.,* No. 97–C–0772, Complaint at ¶ 6 (Cir. Ct. Cabell County, W. Va. filed Sept. 30, 1997). As a result of this complaint, American Motorists, from whom the corporate offices of Gadzooks had obtained a commercial general liability insurance policy, provided counsel to represent the Huntington Gadzooks store in its defense of this lawsuit.[2] American Motorists refused, however, to represent Mr. Tackett in this matter. Consequently, Mr. Tackett was required to obtain his own defense counsel. Ultimately, the L. family reached and entered into a settlement agreement with the defendants, Gadzooks and Mr. Tackett.[3]

Following this settlement, Mr. Tackett filed a declaratory judgment action against American Motorists in the Circuit Court of Cabell County, on June 16, 2000, seeking to recoup the legal expenses he incurred in his defense of the L. family's lawsuit.[4] Following the parties' motions for summary judgment, the circuit court, by order entered October 30, 2001, rejected Mr. Tackett's motion and granted summary judgment to American Motorists finding that the insurance company was not obligated to defend Mr. Tackett in the L. family's lawsuit. In short, the circuit court determined that

American Motorists did not have a duty to defend Mr. Tackett as to Miss L.'s sexual harassment claim because the policy contained an "intentional injury" exclusion. Similarly, the court concluded that the conduct allegedly attributed to Mr. Tackett was "entirely foreign to the risk that was insured against" and therefore not covered by the subject insurance policy or American Motorists' duty to defend thereunder. Lastly, the court found that American Motorists' failure to issue a reservation of rights in connection with its defense of Gadzooks was not dispositive of the existence of a duty to defend Mr. Tackett in the same matter. From these rulings of the circuit court, Mr. Tackett appeals to this Court.

## II.

### STANDARD OF REVIEW

■ Procedurally, the instant appeal is before this Court as a result of the circuit court's grant of summary judgment to American Motorists and its denial of summary relief to Mr. Tackett. Typically, we apply a plenary review to a circuit court's entry of summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Similarly, when review of a circuit court's denial of summary judgment is properly before this Court, we examine anew the circuit court's ruling. "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W.Va. 80, 576 S.E.2d 807 (2002).[5]

---

**2.** In its defense of Gadzooks, American Motorists did not issue a reservation of rights letter to specifically exclude Mr. Tackett's interests from the scope of its representation of Gadzooks.

**3.** By the terms of this settlement, Mr. Tackett paid the L. family $1,000.00 for a full release of their claims against him. Additionally, American Motorists, on behalf of Gadzooks, paid an undisclosed sum in satisfaction of the L. family's claims against Mr. Tackett's employer.

**4.** Mr. Tackett claims that he has expended $26,968.35 in attorney's fees and associated expenses to defend against the L. family's lawsuit. Prior to filing this action, Mr. Tackett filed a cross-claim against Gadzooks in the L. family's lawsuit asserting that Gadzooks "owed a duty ... to provide [Mr. Tackett] a defense in this matter, at the corporation's expense." The circuit court subsequently dismissed this cross-claim in connection with its acceptance of the parties' settlement of the L. family's claims.

**5.** Although neither party raises this issue, we find the circuit court's denial of Mr. Tackett's motion for summary judgment to be properly reviewable on appeal to this Court. *See generally Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W. Va. 80,

Furthermore, the instant appeal requires this Court to review the terms of the insurance policy at issue herein. Generally, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. pt. 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). As such, we will also apply a *de novo* standard of review to these rulings of the circuit court. "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999). *See also* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in mind, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The assignments of error raised by Mr. Tackett in the instant proceeding may be succinctly summarized as follows: does an insurer have a duty to defend its insured's employee in a cause of action alleging that the employee, in his/her capacity as such, intentionally caused personal injury to a third party? Before reaching the specific issues pertinent to the case *sub judice*, it is instructive to first re-examine the jurispru-

dence of this State addressing an insurer's duty to defend its insured.

A contract for indemnification from loss typically also includes a provision whereby the insuring entity agrees to provide legal representation to said insured with respect to any claims filed against him/her for which the subject policy provides coverage. This type of arrangement has come to be known as the insurer's duty to defend. *See, e.g.*, Black's Law Dictionary 523 (7th ed.1999) (defining "duty-to-defend clause" as "[a] liability-insurance provision obligating the insurer to take over the defense of any lawsuit brought by a third party against the insured on a claim that falls within the policy's coverage"). Unquestionably, the terms of the pertinent insurance contract govern the parties' relationship and define the scope of coverage as well as the existence of the insurer's duty to defend its insured.

Less certain, however, is the extent of such a duty. In this regard, we have held that "included in the consideration of whether [an] insurer has a duty to defend is whether the allegations in the complaint ... are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance polic[y]." Syl. pt. 3, in part, *Bruceton Bank v. United States Fid. & Guar. Ins. Co.*, 199 W.Va. 548, 486 S.E.2d 19 (1997).[6] However, " '[t]here is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.' " *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986) (quoting *Union Mut. Fire Ins. Co. v. Inhabitants of Town of Topsham*, 441 A.2d 1012, 1015 (Me.1982)).[7] Thus,

100, 576 S.E.2d 807, 827 (2002) ("[W]here ... the order denying one party's motion for summary judgment simultaneously grants summary judgment to another party, such an order is final and appealable.").

6. *See also* Syl., *Farmers & Mechanics Mut. Fire Ins. Co. of West Virginia v. Hutzler*, 191 W.Va. 559, 447 S.E.2d 22 (1994) ("When a complaint is filed against an insured, an insurer must look beyond the bare allegations contained in the third party's pleadings and conduct a reasonable inquiry into the facts in order to ascertain whether the claims asserted may come within the scope of the coverage that the insurer is obligat-

ed to provide."). *But see State Auto. Mut. Ins. Co. v. Alpha Eng'g Servs., Inc.*, 208 W.Va. 713, 716, 542 S.E.2d 876, 879 (2000) (per curiam) ("If the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy." (citations omitted)).

7. *Cf. Alpha Eng'g Servs.*, 208 W.Va. at 716, 542 S.E.2d at 879 ("[A]n insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers." (citations omitted)).

"the duty to defend an insured may be broader than the obligation to pay under a particular policy. This ordinarily arises by virtue of language in the ordinary liability policy that obligates the insurer to defend even though the suit is groundless, false, or fraudulent." *Pitrolo*, 176 W.Va. at 194, 342 S.E.2d at 160 (citations omitted). In other words, "if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988) (citation omitted).

Because of the imprecise nature of an insurer's duty to defend its insured, there often arises occasion for this Court, as well as other tribunals, to ascertain whether such a duty is present with respect to the assertion of a particular claim against its insured. With respect to general aspects of contractual interpretation involving insurance policies, we have held that "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). *See also Leeber*, 180 W.Va. at 378, 376 S.E.2d at 584 ("[A]ny ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer." (citation omitted)); *Pitrolo*, 176 W.Va. at 194, 342 S.E.2d at 160 (same). *Cf.* Syl. pt. 1, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992) (" 'Where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co. [of America]*, 153 W.Va. 813, 172 S.E.2d 714 (1970).").

█ Likewise, we also have directed reviewing courts to liberally construe insurance policy exclusions in favor of the affected insured. "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488. *Accord American States Ins. Co. v. Tanner*, 211 W.Va. 160, 165, 563 S.E.2d 825, 830 (2002); Syl. pt. 4, *Russell v. Bush & Burchett, Inc.*, 210 W.Va. 699, 559 S.E.2d 36 (2001), *cert. denied*, 537 U.S. 819, 123 S.Ct. 96, 154 L.Ed.2d 26 (2002). Maintaining consistency with our prior precedent in this arena, we previously have observed that the same standard applies to determinations of an insurer's duty to defend its insured. Accordingly, we hold today that "any question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations." *Pitrolo*, 176 W.Va. at 194, 342 S.E.2d at 160. *Accord Leeber*, 180 W.Va. at 378, 376 S.E.2d at 584.

In addition to clarifying the scope of an insurer's duty to defend its insured, the parties' assertions in the instant appeal also require us to consider the nature of the underlying claims that invoke coverage under the Gadzooks policy and the corresponding defense obligation. Particularly relevant to the case *sub judice* are our prior decisions in *Horace Mann Insurance Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988), and *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 542 S.E.2d 827 (2000), both of which concern insurance policy coverage for claims of sexual misconduct.

█ The first of these cases, *Horace Mann Insurance Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988), involved a claim that a child had been sexually abused by his teacher. In that case, the question was whether the teacher's homeowner's liability insurance policy would provide coverage for this claim or whether the policy's intentional acts exclusion precluded such coverage. The subject exclusion provided generally that " '[t]his policy does not apply to liability ... caused intentionally by or at the direction of any insured[.]' " 180 W.Va. at 377, 376 S.E.2d at 583 (footnote omitted). Considering the egregious nature of sexual misconduct claims, we held that

[t]here is neither a duty to defend an insured in an action for, nor a duty to pay

for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains a so-called "intentional injury" exclusion. In such a case the intent of an insured to cause some injury will be inferred as a matter of law. Syl., *Leeber*, 180 W.Va. 375, 376 S.E.2d 581.

Perhaps more on point with the facts of the instant appeal is our more recent decision in *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 542 S.E.2d 827 (2000), wherein we examined a factually comparable situation concerning allegations of sexual harassment, as opposed to criminal sexual abuse, and whether the applicable insurance policy contemplated coverage for, and the ensuing duty to defend against, such a claim. Unlike the generally applicable exclusion at issue in *Leeber*, the exclusionary language examined in *Smith* applied specifically to intentional acts causing bodily injury or property damage: " '[t]his insurance does not apply to . . . "[b]odily injury" or "property damage" **expected or intended from the standpoint of the insured[.]'** " 208 W.Va. at 666, 542 S.E.2d at 829 (emphasis in original). In reviewing the parties' arguments, the Court first concluded that the nature of the sexual misconduct forming the basis of the underlying claim, be it sexual harassment or criminal sexual abuse, was not dispositive as *Leeber* made no such distinction. *Smith*, 208 W.Va. at 669–70, 542 S.E.2d at 832–33. Rather, the Court determined that the coverage questions in *Smith* turned instead upon the precise policy language at issue which specifically limited the exclusion's applicability to intentional acts resulting in bodily injury. In this regard, we held that

[i]n an insurance liability policy, purely mental or emotional harm that arises from a claim of sexual harassment and lacks physical manifestation does not fall within a definition of "bodily injury" which is limited to "bodily injury, sickness, or disease."

Syl. pt. 1, *Smith*, 208 W.Va. 664, 542 S.E.2d 827.

Despite this ruling, we nevertheless found that the asserted sexual misconduct claim was not recoverable under the subject policy because of its additional requirement that the injury for which coverage was sought result from an "occurrence." *See* Syl. pt. 2, *Smith*, 208 W.Va. 664, 542 S.E.2d 827 ("In an insurance liability policy, a claim based on sexual harassment does not come within the definition of 'occurrence,' which is defined as an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions.' "). Finally, we considered, and rejected, the notion that the allegations of a complaint could change the nature of insurance policy coverage available to insure against a claim of sexual misconduct:

[t]he inclusion of negligence-type allegations in a complaint that is at its essence a sexual harassment claim will not prevent the operation of an "intentional acts" exclusion contained in an insurance liability policy which is defined as excluding "bodily injury" "expected or intended from the standpoint of the insured."

Syl. pt. 4, *Smith*, 208 W.Va. 664, 542 S.E.2d 827.

In both of our prior decisions addressing the scope of coverage available to insure against a claim of sexual misconduct, exclusions or definitions have existed which specifically exempted coverage in those particular cases. The policy language at issue in the case *sub judice*, however, is distinguishable. Before addressing these distinctions, however, we must first ascertain whether Mr. Tackett was in fact an insured under his employer's, Gadzooks', commercial general liability insurance policy, and revisit basic precepts in the construction of policy language.

When construing the language employed in insurance policies, we frequently have held that " ' "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.[, Inc.]*, 176 W.Va. 430, 345 S.E.2d 33 (1986).' Syllabus point 2, *Russell v. State Automobile Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992)." Syl. pt. 2, *American States Ins. Co. v. Tanner*, 211 W.Va. 160, 563 S.E.2d 825. Therefore, " ' "[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given

to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co. [of America]*, 153 W.Va. 813, 172 S.E.2d 714 (1970).' Syllabus point 1, *Russell v. State Automobile Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992)." Syl. pt. 3, *Tanner*, 211 W.Va. 160, 563 S.E.2d 825. Where, however, the policy language under consideration is ambiguous, such ambiguities are typically resolved in favor of the insured. *See, e.g.*, Syl. pt. 4, *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 210 W.Va. 223, 557 S.E.2d 277 (2001) (" ' "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).' Syllabus point 4, *Riffe v. Home Finders Associates[, Inc.]*, 205 W.Va. 216, 517 S.E.2d 313 (1999).").

■ Our first inquiry, then, is whether Mr. Tackett is an insured under Gadzooks' American Motorists policy. Obviously, if Mr. Tackett is not an insured thereunder, American Motorists would have no duty to provide him with a defense and further analysis would not be required. The pertinent policy language on this point directs that, in addition to those individuals and/or entities specifically named as insureds on the policy's declarations page, "[e]ach of the following is also an insured: [y]our 'employees,' other than your 'executive officers,' but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business[.]" American Motorists Insurance Company, Commercial General Liability Policy, Policy Number 3MG 769 951–03, p. 7, § II.2.a. None of the parties dispute that Mr. Tackett was an employee of Gadzooks at the time of the relevant events, and no other policy provisions suggest him to be otherwise. *See id.*, at p. 11, § V.5 (defining "employee" as including "a 'leased worker'" but not including "a 'temporary worker'"). *See also id.*, at p. 11, § V.6 (noting that " '[e]xecutive officer' means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document").

Thus, as an insured, Mr. Tackett is entitled to benefit from the coverage provisions of Gadzooks' American Motorists policy, which includes indemnification from loss and the provision of a defense to claims within the policy's coverage that are levied against him. The claims asserted against Mr. Tackett in the L. family's complaint allege, in pertinent part, that

[o]n or about April 19, 1997, the Plaintiff [K.M.L.], while shopping in the Defendant's [Gadzooks'] Store, was attended to by the Defendant, Tackett. At said time and place, the Plaintiff, [K.M.L.], was fifteen (15) years of age. At said time and place, and while the Plaintiff was within the said retail Store, the Defendant, Tackett, while in the course and scope of his employment, *sexually harassed, molested, and violated the infant Plaintiff, by, among other things, making sexual innuendos to the Plaintiff; touching the Plaintiff on various parts of her body, including her breasts; entering the sanctity of her dressing room, when the said infant Plaintiff was disrobed while trying on clothes; reaching his hands under the blouse that the Plaintiff was trying on; and by doing all of the above in front of another individual.*

The said acts and actions of the Defendant, Tackett, acting in his capacity as Assistant Manager of the Defendant, Gadzooks, was a direct and proximate cause of the infant Plaintiff, [K.M.L.], *suffering injury, great embarrassment, consternation, mental pain and anguish, and emotional upset*, which conditions are now present and will remain present for an indefinite time in the future, with some of said conditions potentially becoming permanent.

*K.M.L. v. Gadzooks, Inc.*, No. 97–C–0772, Complaint at ¶¶ 6–7 (Cir. Ct. Cabell County, W. Va. filed Sept. 30, 1997) (emphasis added). In order to avail himself of American Motorists' duty to defend, however, Mr. Tackett must demonstrate that "the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance polic[y]." Syl. pt. 3, in part, *Bruceton Bank v. United States Fid. & Guar. Ins. Co.*, 199 W.Va. 548, 486 S.E.2d 19.

The coverage provided by the American Motorists policy that is potentially applicable to the instant proceeding can generally be classified into two distinct types: bodily injury and personal injury. Under Coverage A addressing "bodily injury," American Motorists states that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' ... to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages." American Motorists Insurance Company, Commercial General Liability Policy, Policy Number 3MG 769 951–03, p. 1, § I.A.1.a. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease." Kemper Extended General Liability Endorsement—Texas, Number CG 77 23, p. 4, ¶ 17. Excluded from the bodily injury coverage provisions are such injuries attributable to intentional acts of the insured:

This insurance does not apply to:

Expected or Intended Injury

"Bodily injury" ... expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

American Motorists Insurance Company, Commercial General Liability Policy, Policy Number 3MG 769 951–03, p. 1, § I.A.2.a. Although there are other exclusions to bodily injury coverage contained in the subject policy, they do not apply to the facts presently before us. *See generally id.*, pp. 1–4, §§ I.A.2.b–n.

▬ Looking to the allegations contained in the L. family's complaint, we find that coverage is not afforded by the bodily injury portion of the American Motorists policy. First, and foremost, there are no averments that bodily injury resulted from Mr. Tackett's alleged sexual misconduct. Instead, the complaint alleges that Miss L. has sustained "great embarrassment, consternation, mental pain and anguish, and emotional upset." *K.M.L. v. Gadzooks, Inc.*, No. 97–C–0772, Complaint at ¶ 7. We have held,

though, that such injuries, standing alone, do not constitute "bodily injury":

[i]n an insurance liability policy, purely mental or emotional harm that arises from a claim of sexual harassment and lacks physical manifestation does not fall within a definition of "bodily injury" which is limited to "bodily injury, sickness, or disease."

Syl. pt. 1, *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 542 S.E.2d 827. Moreover, Miss L.'s averments do not constitute "bodily injury" as that term is defined by the policy's amendatory endorsement. Although this definition includes "mental anguish or mental injury" as components of "bodily injury," the definitional language clearly contemplates that such mental afflictions do not, in and of themselves, constitute bodily injury but rather only if they "result[ ] as a consequence of the bodily injury, sickness or disease." Kemper Extended General Liability Endorsement—Texas, Number CG 77 23, p. 4, ¶ 17. Because Miss L. has not averred that she suffered any type of injury, sickness, or disease other than the emotional upset, anguish, and the like, no claim has been stated under the bodily injury coverage provisions of the Gadzooks policy.

▬ Furthermore, since we conclude that the complaint's allegations do not come within the "bodily injury" portion of policy coverage, we likewise find that the intentional acts exclusion applicable thereto does not apply to automatically extinguish American Motorists' duty to defend Mr. Tackett. Unlike the generally applicable intentional acts exclusion contained in the policy considered by the *Leeber* court, the instant exclusion applies solely to intentional acts resulting in bodily injury. *Compare Leeber*, 180 W.Va. at 377, 376 S.E.2d at 583 (" 'This policy does not apply to *liability* ... caused intentionally by or at the direction of any insured[.]' " (emphasis added) (footnote omitted)) *with* American Motorists Insurance Company, Commercial General Liability Policy, Policy Number 3MG 769 951–03, p. 1, § I.A.2.a ("This insurance does not apply to ... [e]xpected or [i]ntended [i]njury[:] *"Bodily injury"* ... expected or intended from the standpoint of the insured." (emphasis added)).

The second type of coverage provided by the American Motorists policy is for damages resulting from "personal injury." As with the bodily injury coverage provisions, American Motorists "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages." American Motorists Insurance Company, Commercial General Liability Policy, Policy Number 3MG 769 951–03, p. 5, § I.B.1.a. "Personal injury" is defined in the policy as

> injury, other than "bodily injury," arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;*
>
> d. *Oral* or written *publication of material that slanders* or libels *a person* or organization or disparages a person's or organization's goods, products or services; or
>
> e. *Oral* or written *publication of material that violates a person's right of privacy.*

American Motorists Insurance Company, Commercial General Liability Policy, Policy Number 3MG 769 951–03, p. 13, §§ V.13.a-e (emphasis added). As the subject policy does not contain an intentional acts exclusion applicable to its personal injury coverage, the only pertinent exclusion regarding personal injuries directs that "[t]his insurance does not apply to . . . '[p]ersonal injury' . . . [a]rising out of oral . . . publication of material, if done by or at the direction of the insured with knowledge of its falsity." *Id.*, p. 5, § I.B.2.a.(1).

In addition to those affronts specifically referenced in the policy definition of "personal injury," we previously have observed that insurance coverage for personal injuries is a rather broad concept.

> It is well settled in insurance law that "bodily injury" and "personal injury" are not synonyms and that these phrases have two distinct definitions. The term "personal injury" is broader and includes not only physical injury but also any affront or insult to the reputation or sensibilities of a person. "Bodily injury," by comparison, is a narrow term and encompasses only physical injuries to the body and the consequences thereof.

*Smith,* 208 W.Va. at 668, 542 S.E.2d at 831 (internal quotations and citations omitted). *See also id.* (noting that "in insurance law 'bodily injury' is considered to be a narrower concept than 'personal injury' which covers mental or emotional injury" (internal quotations and citation omitted)).

Turning now to the allegations contained in the L. family's complaint, we are convinced that the averments contained therein fall squarely within the ambit of the personal injury coverage provisions of the Gadzooks policy. Among the claims stated are complaints that Mr. Tackett "mad[e] sexual innuendos to [Miss L.]"; "touch[ed] her]"; and "enter[ed] the sanctity of her dressing room." *K.M.L. v. Gadzooks, Inc.,* No. 97–C–0772, Complaint at ¶ 6. Each of these allegations potentially state a covered claim pursuant to the above-quoted policy definition of "personal injury" as well as under our broader judicial interpretation of that term. *See* American Motorists Insurance Company, Commercial General Liability Policy, Policy Number 3MG 769 951–03, p. 13, §§ V.13.a-e; *Smith,* 208 W.Va. at 668, 542 S.E.2d at 831. Because an "insurer has a duty to defend [if] the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance polic[y]," Syl. pt. 3, in part, *Bruceton Bank v. United States Fidelity and Guaranty Insurance Co.,* 199 W.Va. 548, 486 S.E.2d 19 (1997), we conclude that the circuit court erred by ruling that American Motorists did not have a duty to defend Mr. Tackett in conjunction with the L. family's lawsuit. Accordingly, we reverse the order of the circuit court holding to the contrary. Furthermore, insofar as Mr. Tackett had to provide his own defense against the claims lodged by the L. family and incurred expenses in association therewith, we remand this case for further proceedings consistent

with this Opinion and in accordance with our prior holdings affording relief to similarly aggrieved insureds in *Aetna Casualty and Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986). *See generally* Syl. pts. 1–2, *Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (Syl. pt. 1: "Where an insured is required to retain counsel to defend himself in litigation because his insurer has refused without valid justification to defend him, in violation of its insurance policy, the insured is entitled to recover from the insurer the expenses of litigation, including costs and reasonable attorney's fees."; Syl. pt. 2: "Where a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation.").

## IV.

## CONCLUSION

For the foregoing reasons, the October 30, 2001, order of the Circuit Court of Cabell County is hereby reversed, and this case is remanded for further proceedings consistent with this Opinion.

Reversed and Remanded.

Chief Justice STARCHER concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

STARCHER, Chief Justice, concurring, in part, and dissenting, in part:

(Filed July 11, 2003)

I concur with the result in the majority's opinion: the tortfeasor in the underlying case, Mr. Tackett, is absolutely entitled to a defense and indemnification under his employer's commercial general liability policy.

I dissent, however, to that portion of the opinion that relies upon *Smith v. Animal Urgent Care, Inc.,* 208 W.Va. 664, 542 S.E.2d 827 (2000) because I now question whether that case was correctly decided.

First, the Court in Syllabus Point 1 of *Smith v. Animal Urgent Care* reached the conclusion that "purely mental or emotional harm that arises from a claim of sexual harassment and lacks physical manifestation does not fall within a definition of 'bodily injury' which is limited to 'bodily injury, sickness, or disease.'" Frankly, this is an archaic conceptualization of human anatomy and physiology, based on a belief that there is a distinction between "mental" and "physical" injuries. The science of today establishes that the brain can be physically injured solely through an emotional disturbance. A traumatizing event can trigger severe chemical reactions in the brain, such that a tangible injury to the brain can occur. Ask any combat veteran about post-traumatic stress disorder, or any doctor who treats that veteran—they will tell you that intense stress can cause the brain to be "rewired." [1]

In other words, in the past when we said someone was "emotionally scarred" by an event, it might have been closer to the truth than we knew.

So when this Court said in *Smith v. Animal Urgent Care* that psychological injuries caused by sexual harassment were not bodily injuries, that conclusion ignored modern science and ignored the physical, chemical aspects of psychological injuries. If a record of medical evidence were presented on this point to the Court, perhaps the folly of *Smith v. Animal Urgent Care* might be recognized.

Second, this Court held in Syllabus Point 2 of *Smith v. Animal Urgent Care* that a claim against a liability insurance policy that is based on sexual harassment is not an "occurrence" or an "accident." This holding is harmful to business owners, large and small, because it ignores the fact that sexual

---

[1]. That "rewiring" manifests itself through emotional expressions, but is difficult to show with empirical evidence.

The structure of every person's body is different, particularly the complex, minute physiology of their brain. It would be difficult for a doctor to show how the structure and/or operation of a person's brain was changed by a traumatic event without having a complete analysis of the structure and operation of the person's brain done before the traumatic event. Frankly, since these tests are expensive, it is very unlikely doctors will have "pre-event" test results to use as a "baseline" for comparison.

harassment by an *employee* is usually not an intentional or expected act by the *employer.* A business owner may do nothing to intentionally harm his or her customers, and should not expect his or her employees to cause bodily injury by sexually harassing customers, yet insurance companies will rely on *Smith v. Animal Urgent Care* to deny the business owner any liability insurance coverage.

The liability policy at issue in *Smith v. Animal Urgent Care* defined "occurrence" and "accident" in a way that excluded coverage for injuries "expected or intended from the standpoint of the insured." This is generally referred to as an "intentional acts exclusion." It is a well-settled principle of insurance law that such an exclusion

> ... does not exclude liability for unintentional or unexpected *injury.* The mere act of doing an intentional act by the insured does not relieve the insurer where the resultant injuries were unintended.

"Coverage or exclusion of intentional injuries," 43 Am.Jur.2d § 708 (1982) (emphasis added). *See also, State ex rel. Davidson v. Hoke,* 207 W.Va. 332, 339–40, 532 S.E.2d 50, 57–58 (2000) (*per curiam* ) (Starcher, J., concurring). In other words, for the "intentional acts" exclusion to operate, the insured must have both committed an intentional act, and intended or expected the consequential injury.

Under our holding in *Smith v. Animal Urgent Care,* if one bad employee gropes a customer, the purchaser of the liability insurance, the business owner, can be left holding the bag with no liability coverage. In these circumstances, there should be coverage because, *from the standpoint of the business owner,* the injury to the customer was not expected or intended.

I concur with the result reached by the majority opinion. However, I would overrule *Smith v. Animal Urgent Care,* and to the extent the majority opinion relies upon that case, I dissent.