**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1222

ROBERT E. GRAHAM,

                    Plaintiff - Appellant,

          v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

                    Defendant - Appellee.

Appeal from the United States District Court for the Southern
District of West Virginia, at Bluefield.  David A. Faber, Senior
District Judge.  (1:10-cv-00453-DAF)

Argued:  January 25, 2012          Decided:  April 11, 2012

Before KING, GREGORY, and FLOYD, Circuit Judges.

Reversed and remanded by unpublished opinion.  Judge Floyd wrote
the opinion, in which Judge King and Judge Gregory joined.

**ARGUED:** Michael W. Carey, CAREY SCOTT DOUGLAS & KESSLER, PLLC,
Charleston, West Virginia, for Appellant.   Don C. A. Parker,
SPILMAN, THOMAS & BATTLE, PLLC, Charleston, West Virginia, for
Appellee.   **ON BRIEF:** John A. Kessler, David R. Pogue, CAREY
SCOTT DOUGLAS & KESSLER, PLLC, Charleston, West Virginia, for
Appellant.   Lisa J. Bray, SPILMAN, THOMAS & BATTLE, PLLC,
Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Circuit Judge:

In this appeal we consider whether the district court properly granted summary judgment to National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), holding that the company had no duty to defend Robert Graham in a 2004 civil action brought by the State of West Virginia. For the reasons stated below, we reverse.

I.

A.

Graham is the former Executive Director of two not-for-profit West Virginia corporations, the Council on Aging, Inc. and All Care Home and Community Services, Inc. The Council on Aging provides social and other services to West Virginia's elderly through state and federal grants, and fees from state and federal Medicaid funds. All Care Home provides Medicaid case management services to the elderly through fees from state and federal Medicaid funds. The same individuals compose the Board of Directors of each corporation.

During all relevant times, National Union insured both corporations under a general liability insurance policy. The policy covers, among other things, claims for wrongful acts and a defense of the "insured" against such claims. Graham qualifies as an "insured" under the policy.

2

National Union's wrongful act coverage includes a litany of exclusions, four of which are relevant here:

- Exclusion A, providing that the policy does not cover "[a]ny claim based upon or attributable to the 'insured' gaining in fact any personal profit or advantage to which they were not legally entitled, including remuneration paid in violation of law as determined by the courts";

- Exclusion C, providing that the policy does not cover "[a]ny claim brought about or contributed to by fraud, dishonesty or criminal act of any 'insured'";

- Exclusion I, providing that the policy does not cover "[a]ny claim[] made against the 'insured' for damages attributable to wages, salaries and benefits"; and

- Endorsement #14, providing that the policy does not cover claims for non-pecuniary relief.

Notably, Exclusion C contains an exception indicating that the policy will cover claims "brought about or contributed to by fraud, dishonesty or criminal act," unless and until "a judgment or other final adjudication" or "admission of guilt" establishes that the insured committed the act(s).

B.

In 2004, West Virginia (the State) filed a civil complaint against Graham and the two corporations, alleging that they had

3

breached the public trust in their use of public funds and that, as a result, Graham had been unjustly enriched at the expense of taxpayers. The complaint asserted, among other things, that Graham collected excess compensation and benefits related to his employment, Graham exploited the Board of Directors, Graham breached his legal duty "to make full disclosure of all material facts to the Board of Directors when asking their approval of expenditures which [would] inure to his personal benefit, or to the benefit of his family," and the Board of Directors breached its legal duty "not to make distributions of assets or income other than to serve the charitable purposes for which [the organizations] were formed."

The State sought (1) a preliminary injunction, (2) appointment of a receiver or court-monitor to oversee the operations of the corporations, (3) a complete and independent accounting of the corporations and of Graham's personal assets and financial dealings, (4) a final injunction removing Graham from his position and authority to act on behalf of the corporations and requiring implementation of accountability mechanisms and procedures, (5) a declaration encumbering Graham's assets by constructive trust to the extent that he was unjustly enriched, (6) a judgment requiring Graham "to disgorge any excess compensation or other moneys unjustly obtained," and (7) an order requiring that "any moneys . . . collected from

Graham pursuant to [a] judgment be expended on the charitable purposes for which the defendant corporations were formed."

Upon receipt of the State's complaint, Graham's counsel forwarded it to National Union's agent, AIG Claims Services, Inc., requesting coverage. AIG declined, however, indicating that Exclusion A, Exclusion I, and Endorsement #14 barred Graham from coverage for the State's claims. Accordingly, Graham furnished his own defense throughout the state court proceedings.

Nearly five-and-a-half years after the State filed its complaint, the Circuit Court for Kanawha County granted summary judgment to Graham and the corporations, holding that the issues raised by the State were moot because of changed circumstances. According to the circuit court, the State's claims were moot because the corporations had removed Graham as Executive Director, passed a resolution prohibiting Graham's "involvement in any aspect of the management, business operations or affairs of the [c]orporations," and instituted policies to prevent a subsequent executive director from repeating Graham's conduct. Additionally, the State's claim for repayment of excess compensation was moot because the State had filed the claim to benefit the corporations, and Graham and the corporations had agreed to relinquish any claims against each other.

C.

On March 3, 2010, Graham filed this lawsuit, alleging that National Union had breached its contractual duty to defend him against the State's 2004 claims. Graham seeks attorneys' fees incurred in the underlying action and this action, and "damages and other relief available under West Virginia law to a policyholder who substantially prevails against his insurer."

The district court, exercising jurisdiction under 28 U.S.C. § 1332, granted summary judgment to National Union, holding that the insurer had no duty to defend Graham because Exclusion I of its policy barred Graham from coverage for the State's claims. Graham now appeals.

II.

We review a grant of summary judgment de novo. Brandt v. Gooding, 636 F.3d 124, 132 (4th Cir. 2011). We view facts in the light most favorable to the nonmoving party when there is a genuine issue regarding those facts. Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 277 (4th Cir. 2011). A court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

6

In this diversity action, the parties agree that West Virginia law applies. In West Virginia, "an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (W. Va. 1986). "Thus, the duty to defend an insured may be broader than the obligation to pay under a particular policy." Tackett v. Am. Motorists Ins. Co., 584 S.E.2d 158, 162-63 (W. Va. 2003) (quoting Pitrolo, 342 S.E.2d at 160) (internal quotation marks omitted). "[I]f part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." Id. (quoting Horace Mann Ins. Co. v. Leeber, 376 S.E.2d 581, 584 (W. Va. 1988)) (internal quotation marks omitted).

Here, the district court held that National Union had no duty to defend Graham because "[t]he [State's] complaint in the underlying lawsuit focused on Graham's excessive compensation and disproportionately generous benefits package as one of the central ways in which Graham abused his position and misappropriated his employer's resources." Graham v. Nat'l Union Ins. Co. of Pittsburgh, Pa., No. 1:10-00453, 2011 WL

673945, at *3 (S.D. W. Va. Feb. 17, 2011).  The court reasoned that the State's claims were "directly 'attributable to wages, salaries and benefits'" and thus barred from coverage by Exclusion I.  Id.  We disagree.

The State's complaint alleged acts "attributable to wages, salaries and benefits."  But it also asserted that Graham wasted taxpayer funds and exploited the Board of Directors.

For example, the complaint averred that Graham used taxpayer funds to supply the basement of a senior center with "state-of-the-art exercise equipment" that the seniors did not use and to outfit "[t]he upper floors [of the center], accessible only by stairs, . . . with pool tables, and a handsomely furnished apartment complete with a large screen TV, . . . a tanning bed, and a hot tub."  The complaint also alleged that Graham "remove[d] all representation on the Board from public agencies" so that the Board "consist[ed] only of members (patrons) age 60 and over," and that it was his practice to present the Board with "perfunctory written recommendations" that were approved "without full disclosure . . . of the facts" and "without appreciation by the Board of the consequences of their actions."

We think it plain, therefore, that the complaint's allegations were not entirely "attributable to wages, salaries and benefits," and consequently, we cannot conclude, as the

8

district court did, that Exclusion I absolved National Union of its duty to defend Graham. Rather, we hold that because Exclusion I applied to some but not all of the State's claims, National Union had a duty to defend Graham unless another exclusion precluded coverage. See Tackett, 584 S.E.2d at 163.

And our review of the policy reveals no other applicable exclusions or endorsements. Endorsement #14 fails to bar coverage because the State did not confine its requested relief to non-pecuniary measures; rather, it requested a judgment that required Graham "to disgorge any excess compensation or other moneys unjustly obtained." Exclusion A also fails because it requires a determination "by [a] court[]" that the insured "gain[ed] . . . personal profit or advantage to which [he was] not legally entitled." Here, where the trial court ultimately dismissed the State's claims as moot, the necessary court determination is lacking.

## B.

Not only do the exclusions and endorsements in National Union's policy fail to absolve it of a duty to defend Graham, the exception to Exclusion C effectively reaffirms the duty.

Recall that Exclusion C bars coverage for "[a]ny claim brought about or contributed to by fraud, dishonesty or criminal act of any 'insured,'" but not until "a judgment or other final

9

adjudication . . . establish[es] that acts of active or deliberate fraud, dishonesty or criminal act [were] committed by such 'insured(s)' or . . . there [is] an admission of guilt by the 'insured.'" Without such an adjudication or admission, coverage remains intact.

Graham contends, and National Union does not dispute,[*] that the State's complaint included allegations that Graham unjustly enriched himself through fraud and dishonesty. Thus, National Union had a duty to defend Graham until either he admitted guilt or the court determined he committed the acts. Because the trial court dismissed the State's claims as moot, however, no "judgment or other final adjudication" or "admission of guilt" occurred. Thus, we are compelled to hold that the exception to Exclusion C required National Union to defend Graham and that National Union breached its contractual duty by not doing so.

In so holding, we recognize that the district court concluded otherwise, reasoning instead that the exception to Exclusion C mandated coverage only to the extent that no other policy exclusion applied to the claims. See Graham, 2011 WL

---

[*] The parties failed to include National Union's Answer as part of the record on appeal. Nevertheless, National Union confirmed at oral argument that its Answer did not dispute Graham's charge that the State alleged he committed "fraud, dishonesty and/or criminal acts in the misappropriation of the assets of the [c]orporations to unjustly enrich himself."

10

673945, at *3 ("[The exception in Exclusion C] modifies only the scope of the exclusion in which [it] is contained . . . [and] does not . . . render all other exclusions obsolete."). But this view is contrary to West Virginia law.

In West Virginia, "[a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms." Marcum Trucking Co. v. U.S. Fid. & Guar. Co., 438 S.E.2d 59, 63 (W. Va. 1993) (quoting Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488, 491 (W. Va. 1987), overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co., 504 S.E.2d 135 (W. Va. 1998)) (internal quotation marks omitted). Furthermore, because "insurance policies are prepared solely by insurers, any ambiguities in the[ir] language . . . must be construed liberally in favor of the insured." Pitrolo, 342 S.E.2d at 160. Such is the case here. National Union drafted a policy that fails to "conspicuous[ly], plain[ly], and clear[ly]" indicate how the exception to Exclusion C operates relative to the other exclusions. At best, then, National Union drafted a policy that is ambiguous, and we thus construe the language "liberally in favor of the insured," holding that the policy entitled Graham

11

to a defense against the State's claims and that National Union violated its duty to provide one.

## III.

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand for further proceedings not inconsistent with this opinion.

<u>REVERSED AND REMANDED</u>

12